**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **Robert Earl Council,**<br><br>*Plaintiff*<br>**v.**<br><br>**Commissioner John Hamm, in his official capacity, for the Alabama Department of Corrections, Dr. Wendy Williams, in her official capacity, Defendant Edward Ellington, in his official capacity, Warden William Streeter, in his official capacity, Warden Chadwick Crabtree, in his official capacity.**<br><br>*Defendants.* | **Civil Action No. 2:23-cv-00658**<br><br><br>**FIRST AMENDED COMPLAINT** |

## FIRST AMENDED COMPLAINT



*Plaintiff Robert Earl Council, organizer*

**"Even if y'all killed him [Robert Earl Council] I'll make sure nothing happens to y'all."**
- Lt. Jeremy Pelzer speaking to Crips gang members at Limestone prison in June 2023

**"I want Robert Council....I'm tired of this bastard and all his lawsuits."**
- Then Sgt. Pelzer, while threatening physical violence against prisoner Larry Jones, at Limestone prison on October 29, 2019

1

Plaintiff Robert Earl Council hereby amends his original Complaint [Doc. no. 1] by adding Count IV, a procedural due process challenge to his solitary confinement, and by adding four official capacity ADOC Defendants. All references in this First Amended Complaint to "Att. 1" or "Att. 2" or the like, refer to the copies of Plaintiff's two Declarations that were filed as attachments to the original Complaint, and that are incorporated as attachments hereto. [Doc. nos. 1-1 & 1-2]

## **INTRODUCTION**

1.

Plaintiff Robert Earl Council ("Plaintiff Council"), an incarcerated organizer well-known for advancing prisoners' rights in Alabama through nonviolence and civil disobedience, requires preliminary relief. Plaintiff Council seeks to prevent Defendant Commissioner John Hamm of the Alabama Department of Corrections ("ADOC"), in his official capacity, from retaliating against Plaintiff in violation of the First and Eighth Amendments by continuing to expose Plaintiff Council to a substantial risk of being assaulted or murdered by Lt. Jeremy Pelzer, other Limestone Correctional Facility ("Limestone") officers, or inmates who act at their behest, and who have constant access to the solitary confinement cell where Plaintiff Council is housed at Limestone.

2.

Plaintiff Council's release from solitary confinement is also necessary to prevent immediate and irreparable damage to Plaintiff Council's mental health, PTSD, and anxiety, which are currently being triggered and substantially worsened by his confinement in solitary.

3.

Since 1994, when then-20-year-old Plaintiff Council entered the custody of the ADOC, Plaintiff Council has been organizing, advocating, and litigating for the rights of prisoners in Alabama. He is likely the most effective prisoners' rights organizer in the state, if not the

country, and one of the most successful advocates working to expose ADOC corruption. A co-founder of the Free Alabama Movement ("FAM"), he has gone on numerous hunger strikes, organized state-wide (and nation-wide) prisoner labor strikes, a correctional officer strike, filed or helped file hundreds of prisoner rights lawsuits against ADOC, and garnered national and international press for ADOC's abuse and mistreatment of prisoners. In the course of doing so, Plaintiff Council has placed his own life on the line many times over, exposing himself to beatings and chemical sprays at the hands of correctional officers that have left him with a fractured skull, broken ribs, and permanently blinded in one eye.

4.

Since 2019, Plaintiff Council has been largely housed at Limestone, where he has filed and helped file lawsuits and grievances against Lt. Pelzer, trying to expose Lt. Pelzer's wide range of criminal and unconstitutional retaliation and violence against Plaintiff Council and other Limestone inmates. *See infra*, Statement of Facts ("SOF") § I (D) (recent and ongoing protected activity)).

5.

An attached Declaration of Plaintiff Council, Att. 2, provides a chronological summary, from December 2016 onwards, including: Plaintiff Council's First Amendment protected activities, correctional officers' use of excessive force on him, and their fabrication of disciplinary charges and other grounds to repeatedly hold Plaintiff Council in solitary confinement for approximately seven years.

6.

A second attached Declaration of Plaintiff Council, Att. 1, provides a more detailed narrative of Plaintiff Council's protected activity that has provoked retaliation by Lt. Pelzer or others, including assaults on Plaintiff Council by correctional officers followed by fabricated

grounds to place Plaintiff Council in solitary confinement as retaliation and as a way to limit and chill Plaintiff Council's organizing, advocacy, and litigation efforts against them.

***

7.

Plaintiff Council requests that this Court grant judgment against Defendant Commissioner Hamm and grant Plaintiff Council's upcoming motion for a temporary restraining order to prevent ADOC from depriving Plaintiff Council of his constitutional rights, and health and safety, by enjoining Defendant Hamm from:

> (1) halting or interfering with the immediate transfer of Plaintiff Council away from Limestone; and,

> (2) holding Plaintiff Council in solitary confinement.

## JURISDICTION AND VENUE

8.

This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action asserts one or more deprivations of federal constitutional rights by a state officer.

9.

Venue is proper in the Northern Division of the Middle District of Alabama under 28 U.S.C. § 1391(b)(1), because Defendants Commissioner John Hamm, Deputy Commissioner Dr. Wendy Williams, and Institutional Coordinator Edward Ellington in their official capacities reside at the state capitol or at ADOC's Montgomery headquarters where they each have an office; and under 28 U.S.C. § 1391(b)(2), because a substantial part of the material events of this case have occurred and are occurring at ADOC headquarters, where Commissioner Hamm, the ADOC General Counsel, and the ADOC's housing and classification officers, have failed to

transfer Plaintiff Council away from Limestone and Lt. Pelzer and release Plaintiff Council from solitary confinement.

## PARTIES

10.

**Plaintiff Robert Earl Council** is a citizen of Alabama, and, despite being held in solitary confinement at Limestone and suffering from anxiety and PTSD, is competent to bring this action for protection of his rights under the Constitution of the United States.

11.

**Defendant John Hamm** is sued in his official capacity as the Commissioner of the Alabama Department of Corrections, for prospective relief under *Ex parte Young* for ongoing violations of the First, Eighth, and Fourteenth Amendments. The Commissioner of ADOC is responsible for the independent direction, supervision and control of ADOC. At all relevant times Defendant Hamm, and the other Defendants, acted and will act under color of state law.

12.

**Defendant Dr. Wendy Williams** is sued in her official capacity as the ADOC Deputy Commissioner for Men's Services Operations for prospective relief under *Ex parte Young* for ongoing violations of the First, Eighth, and Fourteenth Amendments.

13.

**Defendant Edward Ellington** is sued in his official capacity as an ADOC Institutional Coordinator for prospective relief under *Ex parte Young* for ongoing violations of the First, Eighth, and Fourteenth Amendments. In his official role, Ellington is responsible for planning, monitoring, and reviewing the day-to-day operations of correctional institutions in his assigned area. His duties include supervising the wardens of the prisons in his areas, ensuring effective and safe daily operations at the facilities and leading the external security audit team. Defendant Ellington was also responsible for serving as the liaison between wardens and the ADOC

executive leadership. Defendant Ellington replaced Cheryl Price in this position. Upon

information and belief, Defendant Ellington was responsible for failing to transfer Plaintiff

Council away from Limestone since roughly 2017.

14.

**Defendant William Streeter** is sued in his official capacity as the Correctional Warden

II at Limestone for prospective relief under *Ex parte Young* for ongoing violations of the First,

Eighth, and Fourteenth Amendments.

15.

**Defendant Chadwick Crabtree** is sued in his official capacity as the Correctional

Warden III at Limestone for prospective relief under *Ex parte Young* for ongoing violations of

the First, Eighth, and Fourteenth Amendments.

## CONDITIONS PRECEDENT
16.

Any and all conditions precedent to this lawsuit have been satisfied or exhausted.

## STATEMENT OF FACTS

**I.    Overview Of Ongoing Retaliatory Violence and Unlawful Solitary Confinement.**

**Chart: Overview of acts of retaliatory violence by correctional officers against Plaintiff Council**

| Date | Location | Description |
|---|---|---|
| 15-Oct-23 | Limestone | Officer Stephen Parker assaulted Plaintiff with cell buster pepper spray |
| 2-Dec-22 | Limestone | Lt. Mike Jones, Sgt. White, and Sgt. Cottle sprayed Plaintiff with mace directly in his face |
| 28-Nov-22 | Limestone | Lt. Mike Jones, Sgt. White, and Sgt. Cottle threw Plaintiff to the floor, cut his clothes off, and placed him in a suicide cell |
| 28-Sep-22 | Limestone | After Plaintiff refused to call off a strike, a CERT team put Plaintiff's arm behind his back, handcuffed him, and dragged him by an arm and leg across the floor |
| 30-Jan-21 | Donaldson | Four officers entered Plaintiff's cell and beat him until he was unconscious. Plaintiff was airlifted to UAB hospital with a cracked skull and permanently blinded in his left eye. |
| 2-Dec-16 | Limestone | Officers Dozier and Shoulders beat, choked, and sprayed Plaintiff with mace after Plaintiff reported Officer Dozier's brother, a member of the CERT team at Holman, to I & I. |

A.      **October 15, 2023, Limestone officers attack Plaintiff Council and place him in solitary confinement based on fabricated charges.**

17.

On October 15, 2023, Limestone officers, once again, retaliated against Plaintiff Council by confronting him with a *knowingly* fabricated disciplinary charge. Officers first accused Plaintiff Council, based on a three-year-old video of him circulating online, of violating ADOC's social media policy, ordering him to submit to handcuffing to be placed in solitary confinement, and using excessive force on him by spraying him with a cell buster pepper spray, an extremely powerful tactical pepper spray.

18.

After he had been taken to the health care unit to be treated for OC spray, Plaintiff Council pointed out to the officers that prisoner Derrol Shaw was visible in the video—Shaw became famous in August 2023 for single-handedly taking over Donaldson correctional facility and was not at Limestone; in addition, the light fixtures in the video were different than those installed in the Limestone dormitories. After Plaintiff Council demonstrated factually why the disciplinary charge against him was false, the correctional officers still charged Plaintiff Council with violating ADOC's social media policy.

19.

Realizing that they needed another basis to justify placing Plaintiff Council in solitary confinement, the officers then accused Plaintiff Council of physically assaulting them. Plaintiff Council told the officers that he had not touched the officers and that the officers did not have body charts, medical records showing that the officers suffered injuries. On October 15, 2023, Plaintiff Council did not pose a threat to the officers and did not physically touch the correctional officers, except for the officers placing him in handcuffs.

20.

On October 30, 2023, the Limestone officers held a purported hearing on the fabricated assault charge and social media policy violations. Plaintiff Council knew from prior experience that the hearing outcome was predetermined and that the hearing officer would support the charging officers without regard to the underlying facts.

21.

When Plaintiff Council arrived at the hearing, he saw that the disciplinary violation forms on the table in front of the hearing judge were already filled out, finding against him. Plaintiff Council had previously told Warden Streeter not to bring him to the disciplinary hearings if they were conducting them as kangaroo courts with predetermined outcomes. Plaintiff Council stated at the disciplinary hearing that he was only there to request that the toilet in his cell be fixed and then left. ADOC brought zero witnesses to the so-called hearing.

22.

If prior practice is any indication, ADOC will soon move to reclassify Plaintiff Council into "closed custody," placing him in solitary confinement for six to eighteen months.

B.    **Recent statements of retaliatory violence by Lt. Pelzer and others.**

23.

Recent threats of violence and attempts to kill Plaintiff Council and other retaliation by Lt. Pelzer and other Limestone officers show an urgent and escalating threat to Plaintiff Council. Lt. Pelzer and other Limestone officers have made recent comments demonstrating their clear intent and attempts to harm Plaintiff Council:

24.

Sometime between May 24, 2023 and June 14, 2023, Lt. Pelzer made a statement to another prisoner that "Robert Earl is the reason Lewis (head of the Crips) can't get out," and "[e]ven if y'all killed him I'll make sure nothing happens to y'all."

25.

On June 28, 2023, Lt. Pelzer told another prisoner, "Robert Council posted a live [referring to live stream] and that's why y'all can't catch store." This statement by Lt. Pelzer was made to two different gang members.

26.

On June 20, 2023, an Officer Charley at Limestone stated to Plaintiff Council, "What you looking at? That's why you lost a [sic] eye at West Jefferson."

27.

On June 23, 2023, at Limestone, Lt. Gilbert and Officer Collins stated, "Fuck that shit. I'm gone start sending their ass out the back gate," referring to killing prisoners.

28.

On June 24, 2023, Lt. Gilbert stated, referring to Plaintiff Council and while gritting his teeth, "I can't wait to catch his ass. Everybody be following him like he somebody."

**C. Prior assaults on Plaintiff Council by correctional officers.**

29.

As detailed in the above chart, below in section II, and in the attached declarations, Plaintiff Council faces a long-standing and ongoing substantial risk of serious injury from assault by correctional officers.

30.

In addition to the October 15, 2023, assault, Plaintiff Council was the victim of three other physical assaults by correctional officers at Limestone in the past year.

31.

On December 2, 2022, Lt. Mike Jones, Sgt. White, and Sgt. Cottle sprayed Plaintiff Council with mace directly in his eyes.

32.

On November 28, 2022, Lt. Jones, Sgt. White, and Sgt. Cottle threw Plaintiff Council to the floor, cut his clothes off, and placed him in a suicide cell.

33.

On September 28, 2022, a CERT team twisted Plaintiff Council's arm behind his back, handcuffed him and dragged him by an arm and leg across the floor.

34.

These were not the first incidents or the only ADOC officers or employees that have attempted to kill Plaintiff Council.

35.

On January 30, 2021, at Donaldson correctional facility, four officers entered Plaintiff Council's cell, beat him until he was unconscious, and initially left him for dead. Plaintiff Council was airlifted to University of Alabama-Birmingham ("UAB") hospital and rendered permanently blind in his left eye.

36.

On December 2, 2016, Plaintiff Council was brutally attacked at Limestone by two correctional officers: while escorting him to the shower, officers Dozier and Shoulders beat and sprayed me with mace.  Officers Dozier and Shoulders beat, choked, and sprayed Plaintiff Council with mace after Plaintiff Council reported Officer Dozier's brother, a member of the CERT team at Holman, to I & I.

37.

Plaintiff Council told other staff employees around this time that he was in fear of his life.

**D.    Plaintiff Council's recent and ongoing protected activity.**

38.

The most recent protected activity of Plaintiff Council, which is provoking Lt. Pelzer to retaliate against Plaintiff Council, includes:

1.    the filing of this complaint
2.    Plaintiff Council's opposition at the disciplinary 'hearing' on October 30, 2023
3.    Plaintiff Council's peaceful opposition, on October 15, 2023, to the officers'

unjustified threat of force, use of force, and fabrication of disciplinary charges to send Plaintiff Council to solitary confinement.

4.      Between July and August 2023, Plaintiff Council engaged in protected activity when he referred five Limestone prisoners, who were victims of correctional officers' use of excessive force, to civil rights attorneys.

39.

This included referring Vinessa Banks, AIS 00271892, to a civil rights attorney after Lt. Pelzer punched Banks, breaking his jaw.

40.

Limestone staff including Lt. Pelzer know of and assume that Plaintiff Council helped these prisoners pursue lawsuits against them.

**E.      A decade-long practice of Limestone officers using excessive force against inmates and then fabricating disciplinary charges against the inmate to cover up their excessive force.**

41.

As a matter of routine practice at Limestone prison, for more than a decade the prison's officers and administrators have conducted sham disciplinary hearings in which the hearing officers always support the charging officer.

42.

Correctional officers issue disciplinary charges to cover up their own use of force against the prisoner being charged.

43.

The decisionmaker at the hearings rubber stamps the disciplinary charge and backs up the officer regardless of the prisoner's story or the underlying facts.

44.

The Limestone wardens then sign off on and approve the outcome of the disciplinary hearing. Evidence will show that the Limestone warden has never overturned a finding of guilty on a disciplinary charge.

45.

Officers who used force against a prisoner, and then brought fabricated disciplinary charges against the prisoner to cover it up, are never disciplined.

F.     **ADOC's own awareness of the need to transfer Plaintiff Council away from Limestone and the threat of retaliatory violence by Lt. Pelzer and others.**

46.

Since 2019, the ADOC's own internal review boards have recommended that Plaintiff Council be transferred away from Limestone and Lt. Pelzer for Prison Council's own safety: In 2019, the ADOC's segregation board recommended that Mr. Council be transferred for his safety to another institution further south.

47.

Plaintiff Council, through his attorney David Gespass, complained of retaliation and violence by Lt. Pelzer in letters to the Commissioner and other top ADOC officials on April 10, 2023, January 9, 2020, and November 18, 2019. Plaintiff's attorney Gespass raised these same concerns regarding Plaintiff Council's safety and the need to transfer him to ADOC's institutional coordinator Cheryl Price in letters on July 10, 2019, and January 9, 2020.

48.

In October 2023, Plaintiff. Council shared his concerns about the threats he faced with an investigator with the Law Enforcement Services Division, Jesse Pallard. Her notes and reports will substantiate the risk of harm to Plaintiff Council while he remains at Limestone.

II.     **Retaliatory violence by Lt. Pelzer and others at Limestone from 2019—present**

A.   **Lt. Pelzer and Limestone officers' retaliatory animus against Plaintiff Council**

1.   *In 2019, Plaintiff Council exposed ADOC corruption at Limestone, including the Limestone "bucket brigade," and filing a lawsuit against Sgt. Pelzer alleging that he used excessive force*

49.

On February 28, 2019, at St. Clair correctional facility, a Corrections Emergency Response Team (CERT) and local police SWAT team members entered Plaintiff Council's cell before dawn. The officers placed him in zip ties and transferred him to Holman correctional facility, where he was placed in solitary confinement. His possessions were stolen or destroyed

in the process, and he was placed in solitary without investigation or being charged with a

disciplinary infraction. To protest his placement in solitary confinement at Holman so that the

ADOC would release him to general population, Plaintiff Council engaged in a hunger strike,

refusing food or liquids for nearly two weeks. On March 12, 2019, he was transferred to the

infirmary at Kilby correctional facility.

50.

In March or April 2019, Plaintiff Council was transferred back to Limestone. In May of

2019, he filed a complaint that Limestone supervisors were using C Dorm to force prisoners to

undergo a dehumanizing "bucket detail," requiring prisoners to stay chained and defecate into a

bucket for three days, to search for contraband. As a result of his outreach to the media, the

Montgomery Advertiser reported on the unconstitutional practice and Limestone stopped the

bucket detail.

51.

In June, 2019, Plaintiff Council assisted another inmate in filing a complaint against Lt.

Bright for his practice of throwing away the paperwork and legal documents of incoming

inmates for arbitrary reasons (liquid stains, rips, tears) without making copies or offering

solutions. In the complained of instance, Lt. Bright took legal documents from an inmate that

were necessary to prepare for an upcoming appeal, resulting in a violation of the inmate's

constitutional rights to due process

52.

On July 29, 2019, Plaintiff Council assisted another inmate, Travis Griggs, AIS 212909,

in filing a lawsuit against Sgt. Pelzer. On May 6, 2019, Griggs was attending a disciplinary

hearing, handcuffed and in a chair, when Sgt. Pelzer physically assaulted Griggs and sprayed

Griggs with mace in the full view and presence of other correctional officers. Griggs listened to

Sgt. Pelzer provide false testimony at the hearing. Griggs stated, "[w]hy you sitting there lying?

You just mad at the world cause your arms are shorter than everybody else's'." This last remark was an insult directed at Sgt. Pelzer's physical deformity.

53.

Sgt. Pelzer became visibly angry, jumped out of his chair, pulled out his mace, sprayed Griggs in the face and neck area, charged across the room, grabbed Griggs by the shirt and slammed him to the floor.

54.

In October 2019, Plaintiff Council communicated with the media and reported to the I & I Division of the ADOC that Captain McKenzie and Sgt. Pelzer were involved in an illegal gambling ring and extortion at Limestone.

55.

In retaliation, upon information and belief, Sgt. Pelzer asked Officer Dustin Brewer to issue a false disciplinary charge to Plaintiff Council for allegedly possessing contraband drugs. On October 29, 2019, Plaintiff Council was placed in solitary confinement at Limestone following a search of his cell allegedly uncovering drugs. Officer Brewer allegedly found drugs in his cell. Officer Brewer planted five pieces of paper in his cell that he then allegedly found and used as justification to place Plaintiff Council in solitary confinement on October 30, 2019.

56.

Officer Brewer issued Plaintiff Council fabricated disciplinary violations for possessing contraband and he was then placed in solitary.

57.

During a conversation on November 23, 2019, between Plaintiff Council and the second officer involved in the October 29, 2019 "shakedown," Officer Cotram stated that he did not see any drugs himself during the shakedown. Just over a month later, on December 30, 2019, Cotram would communicate to Plaintiff Council that he was never questioned by the captains or wardens about the incident.

14

58.

Following his placement in solitary, Plaintiff Council went on a hunger strike from October 30, 2019 to November 12, 2019, naming the threatening and unlawful actions taken against him as well as his friend and supporter outside of the prison, Elizabeth Davenport. Around the same time, Davenport received information that Sgt. Pelzer had made threats against her safety and the safety of her children.

59.

A sworn affidavit written by a prisoner at Limestone correctional facility states that Sgt. Pelzer told the prisoner that he was prepared to retaliate against Plaintiff Council because Sgt. Pelzer knew that Plaintiff Council was working on something that could jeopardize his job. Sgt. Pelzer stated that Plaintiff Council would "regret it" and went on to tell the prisoner about his brother being a "drug dealer" and that Sgt. Pelzer himself had a reputation on the streets for "violence" and further indicated that the retaliation would be in the form of involving Davenport "because he knew where she lived and knew she had kids."

60.

On November 7, 2019, Plaintiff Council served an ADOC Admin. Reg. 208 Complaint upon the wardens at Limestone, contending that Limestone's wardens had failed to investigate specific allegations of corruption and retaliation efforts performed by Sgt. Jeremy Pelzer and Officer Brewer, both of whom were acting in concert with Captains Stephen Langford and Denise McKenzie.

61.

On November 12, 2019, Plaintiff Council came off of the hunger strike following a conversation with Wardens Deborah Toney and Officer Scarlett Robinson, both of whom confirmed that the 208 Complaint had been received and would be investigated.

62.

15

A letter from Plaintiff's attorney, Gespass, dated November 8, 2019, was also sent to Gary Willford, the assistant attorney general for ADOC Legal Division, detailing the sequence of events and evidence of retaliation against Plaintiff Council and Davenport. Plaintiff Council's attorney expressed grave concern over his welfare while he continued to be housed at Limestone.

63.

On January 14, 2020, day nine of another hunger strike, Plaintiff Council was informed by medical staff at Limestone infirmary that should he continue his strike he would require dialysis because his kidneys had been pushed to the limit. He ended his hunger strike.

64.

On January 21, 2020, Plaintiff Council was set to be released back into general population because that was the date that he was to have completed the mandatory segregation time issued following the fabricated disciplinary charges. However, a few days prior, he was notified that he was required to remain in Administrative Segregation indefinitely. Allegedly, he had two enemies transferred to the facility.

65.

Plaintiff Council obtained the names of his two alleged enemies and discovered that one was no longer in ADOC custody (the individual was released on January 21, 2020). The second individual stated in an affidavit that he had never spoken to a classification officer reporting Plaintiff Council to be his enemy. He also stated that if his signature was on any form stating otherwise, then that signature was forged.

66.

On September 28, 2020, Plaintiff Council filed a federal lawsuit against Sgt. Pelzer and other Limestone officers, including Officer Brewer, Captain McKenzie, and Captain Langford, alleging that they had engaged in retaliation against him for exposing the officers' corruption in

running a gambling and extortion racket at Limestone, among other illegal and unconstitutional

actions.

2. *Between July and August of 2023, Plaintiff Council exposed Limestone correctional*
   *officers' physical assaults and use of excessive force on Limestone prisoners*

67.

Between July and August of 2023, Plaintiff Council referred incidents of Limestone

correctional officers physically assaulting and using excessive force against Limestone prisoners

to civil rights attorneys for litigation. These incidents included:

a. Marquez Vaughn, AIS 293183 - Vaughn was beaten by Sgt. Jacobs, Anderson,
   and Officer Green;

b. Vinessa Banks, AIS 271892- Banks was beaten by Sgt. Jacobs, Lt. Pelzer, and
   Officer Clements; Limestone correctional officers beat Banks. Lt. Pelzer punched
   Banks in the mouth, breaking his jaw.

c. Patrick Wooden, AIS 264509- Wooden was beaten by Sgt. Jacobs and Officer
   Waed.  After Lt. Pelzer and other officers broke Banks' jaw, Wooden began to try
   to convince other prisoners to sign a petition decrying the officers' excessive use
   of force against Banks and seeking to hold Lt. Pelzer accountable. Correctional
   officers Sgt. Jacobs and Officer Waed beat Wooden and broke his arm.

d. Andrew Clark, AIS 176971- Clark was beaten by Lt. Chandler, Sgt. Parker, and
   Officer Collins.  On September 5, 2023, Limestone correctional officers Lt.
   Chandler, Sgt. Parker, and Officer Collins beat Clark, who was handcuffed at the
   time, unconscious. After the assault Clark began urinating blood and was taken to
   the infirmary for a body chart and was given an IV. However, the medical staff
   did not check Clark for any head trauma despite the fact that the correctional
   officers also struck him on the head with a baton. These same correctional officers
   then charged Clark with fabricated disciplinary violations to create pretext for
   their use of force.

e. Anthony Jackson, 245389- Jackson was beaten by Officer Owens, Sgt.
   Morrison.  On the morning of August 17, 2023, Officer Owens and Sgt. Morrison
   became angered at Jackson because Jackson was selling food outside of the chow
   hall. Officer Owens and Sgt. Morrison handcuffed Jackson and then, while
   Jackson was handcuffed, slammed Jackson into the mud and gave him a black eye
   and broke his arm. When Jackson returned to his dormitory, another prisoner
   posted a video of him on TikTok. The next day, Lt. Pelzer called Jackson into his
   office and asked him if he helped him post the video to TikTok. He had no
   knowledge of or anything to do with the video.
   Officer Owens and Sgt. Morrison then fabricated four false disciplinaries against
   Jackson: (1) harassment; (2) threatening an officer; (3) disobeying a direct order;
   and (4) delaying and hindering an officer. Jackson had not been given any orders
   by Officer Owens or Sgt. Morrison to obey and presented no threat to the officers.

Rather, Jackson was complying with their orders and standing while handcuffed when he was attacked. Limestone's officer tasked with investigating incidents of excessive force, Captain McKenzie, never took a statement from him despite Jackson's attorney specifically requesting that she do so.

68.

Limestone correctional officers, including Warden Streeter and Lt. Pelzer, became alarmed by the increasing number of attorney legal visits and legal phone calls being scheduled with those five prisoners. These officers began to fear that Plaintiff Council was orchestrating a legal campaign to hold them accountable and that they could be referred to criminal prosecution.

69.

Lt. Pelzer and other Limestone officers knew that Plaintiff Council had assisted prisoners in filing lawsuits against them in the past.

**B. In 2023 and 2022, Limestone officers inflicted beatings and pepper spray on Plaintiff Council as retaliation for exposing ADOC corruption, continuing a pattern of correctional officers using excessive force against Plaintiff Council, including when Donaldson officers blinded Plaintiff Council in 2021 and Limestone officers beat Plaintiff Council in 2016**

1. *October 15, 2023, officers acting on behalf of Lt. Pelzer fabricate disciplinary charges against Plaintiff Council and placed him back in segregation:*

70.

On October 15, 2023, in I dorm at 10:45 a.m. Officer Steven Parker and Officer Brewer entered Plaintiff Council's cell and announced that they were placing him in solitary confinement because he had allegedly violated ADOC's social media policy. Officer Parker sprayed Plaintiff Council with a cell buster pepper spray, an extremely powerful tactical pepper spray commonly used to put down large crowds but not intended to be directed at individuals at close range. This use of force was excessive because Plaintiff Council remained non-violent and made no threat towards the officers.

71.

18

As detailed below, Lt. Pelzer and the officers then also charged Plaintiff Council with false disciplinary violations and a sham disciplinary hearing to provide pretext for placing him back in solitary confinement. Since October 15, 2023, Plaintiff Council remains in solitary confinement.

2. *November 28, 2022, Lt. Mike Jones, Sgt. White, and Sgt. Cottle threw Plaintiff Council on the floor, cut his clothes off, and placed him in a suicide cell.*

72.

On November 28, 2022, Lt. Mike Jones, Sgt. White, and Sgt. Cottle threw Plaintiff Council on the floor, cut his clothes off, and placed him in a suicide cell.

3. *September 28, 2022, a CERT team twisted his arm behind his back, handcuffed him, dragged him by an arm and a leg across the floor*

73.

On September 26, 2022, Alabama prisoners in at least five facilities went on strike, withholding their labor.

74.

By September 28, 2022, Plaintiff Council and other prisoners were on strike. At multiple facilities where the strikes were occurring, the wardens retaliated by denying prisoners medical care and limiting their food to only two meals a day. Limestone officers sent a group of prisoners to negotiate with Plaintiff Council to end the strike and Plaintiff Council explained that the strike was not proceeding for the comfort of the officers or to help the officers run the prison better. That was not the point of what the strikers were doing. Plaintiff Council told everyone in the group that the Alabama prisoners were on strike until they were able to see an opportunity to come home, which included repealing the Habitual Offender Act and making the sentencing guidelines retroactive. That would give many Alabama prisoners serving lengthy sentences an opportunity to be released to their families.

75.

After Plaintiff Council rejected their offer to call off the strike, the prison administrators made a second offer to him to end the work strike. They offered to let several of his friends be released from segregation where they had been detained for years. Plaintiff Council again denied their request. He repeated that the prisoners were solidified in their strike at Limestone, Fountain, Bibb, and other correctional facilities. The point of the strike was not to make it easier for twenty correctional officers to control 2,300 prisoners at Limestone when ADOC supervisory officials were responsible for maintaining sufficient staffing levels, not the prisoners protesting the conditions.

76.

About an hour after that, a CERT team and several officers came into B dormitory where Plaintiff Council slept and counted the prisoners. At the end of the count, instead of exiting the dormitory, the CERT team and officers went to his cell. Plaintiff Council was in the dayroom watching the tv news. Officers told him to come into his cell. When plaintiff arrived, there was an officer from the CERT team inside his cell and one was standing outside his cell. Plaintiff Council informed the officers that he had no contraband and submitted to a strip search. He then stepped aside and allowed his cell to be searched. One of the officers told Plaintiff Council that he was being moved to restrictive housing.

77.

Plaintiff Council refused to go to restrictive housing, stating that he had broken no rule or ADOC regulation and demanded to see their supervisors. One of the officers then reached for Plaintiff Council's wrist and twisted his arm behind his back, placing him in handcuffs. Officers then dragged him by an arm and a leg across the floor in the prison block, twisted both at awkward angles, threw him on top of a trash cart, and wheeled him into the health care unit at

the facility. The health care unit then refused to perform a body chart and document Plaintiff

Council's injuries.

4. *Correctional officers at Donaldson physically beat and injured Plaintiff Council on January 30, 2021, permanently blinding him in his left eye*

78.

In January 2021, prisoners at multiple Alabama correctional facilities went on strike. On

January 11, 2021, for example, incarcerated workers at Fountain went on strike, demanding the

restoration of hot water and visitation.

79.

On January 30, 2021, at Donaldson prison, towards the end of the strike, Ephan Moore

was having a mental health crisis in his cell in the early morning hours. Donaldson correctional

officers beat Moore until he was unconscious. Plaintiff Council, standing nearby, observed this

and pleaded with the officers to stop beating Moore. As he walked back to his cell, a guard

tracked Plaintiff Council and struck him in the back of the head. Sgt. Binder, Sgt. Melton and

Officer Griffin entered his cell and continued to beat him. Plaintiff Council's cellmate Derrol

Shaw observed the entire incident.

80.

Correctional officers beat Plaintiff Council and, after he was unconscious, dragged

Plaintiff Council from his cell by his feet out of the cell, across the length of the dorm, and then

dropped him into the corridor. Believing that they had killed him, officers obtained a mop bucket

and attempted to clean the blood from his cell to cover-up evidence of the assault.  Water from

the mop bucket entered Plaintiff Council's mouth and he started to cough, startling correctional

officers who were surprised to see that Plaintiff Council was still alive.

81.

Plaintiff Council was airlifted to the UAB trauma unit. His skull was cracked in three

different places and he had three broken ribs. Witnesses reported that the trauma unit was heavily

guarded by armed cops that denied Plaintiff Council's family entry to his hospital room.

Members of Alabama Students Against Prisons organized a rally outside the hospital, urging

correctional and hospital staff to let Plaintiff Council's family visit him.

5. *Correctional officers at Limestone also physically beat and injured Plaintiff Council in December 2016*

82.

On December 2, 2016, Plaintiff Council was brutally attacked at Limestone by two

correctional officers. While escorting him to the shower, officers Dozier and Shoulders beat and

sprayed Plaintiff Council with mace. Officer Dozier climbed on top of Plaintiff Council and,

while choking him, taunted Plaintiff Council, asking if he was going to report him to I&I.

Plaintiff Council had recently reported Officer Dozier's brother, a member of the CERT team at

Holman, to I & I. Plaintiff Council told other staff employees around this time that he was in fear

of his life.

**C. In October 2023, Limestone officers served Plaintiff Council with fabricated disciplinaries and placed him in solitary confinement; this continued a pattern of retaliation that Lt. Pelzer and Limestone officers subjected him to since he arrived back at Limestone in December 2021**

1. *In October 2023, Limestone correctional officers charged Plaintiff Council with false disciplinaries and subjected him to a sham disciplinary proceeding to provide pretext for placing him back in solitary confinement*

83.

On October 16, 2023, Sgt. Steven Parker issued Plaintiff Council four disciplinary

violations, alleging that Plaintiff Council: (1) physically assaulted him while he was escorting

Plaintiff Council from Housing Unit I; (2) violated administrative regulations by participating in

a video posted on social media; (3) failed to obey a direct order of an ADOC officials, and (4)

violated administrative regulations by producing a video posted on social media.

84.

22

As noted above, the four disciplinary charges were a sham. As Plaintiff Council pointed out to the officers at the time of the incident, the video was neither recent nor filmed at Limestone. In addition, while the officers accused Plaintiff Council of physically assaulting them, he did not pose a threat to the officers, did not physically touch the correctional officers, except for the officers placing him in handcuffs, and the officers could not produce medical records showing that the officers suffered injuries.

85.

In addition, on October 15, 2023, Plaintiff Council did not disobey an order. Rather, he engaged in protected activity by passively stating his opposition to ongoing unconstitutional retaliation, placement in solitary, and use of force.

86.

Plaintiff Council also did not disobey an order to submit to handcuffs and be escorted to solitary confinement because his PTSD caused him to be unable to comply with the order. Due to the numerous beatings that Plaintiff Council has suffered at the hands of correctional officers, their attempts to kill him, and the years that he has spent in solitary confinement, Plaintiff Council suffers from PTSD. Plaintiff Council's PTSD causes him to hesitate whenever correctional officers approach him in force in a military style phalanx with batons and pepper spray.

87.

Moreover, but for the officers relying on an internet video of him as a retaliatory and fabricated basis to go to I dorm and take him to segregation, they would not have caused and provoked Plaintiff Council into responding with protected opposition and passive, peaceful resistance, by objecting to being transferred to solitary; passive resistance that they could then misconstrue as an assault on Officer Parker and other disciplinary charges.

23

2. *When Plaintiff Council arrived back at Limestone in December 2021, Limestone officers, without justification, immediately placed him in solitary confinement rather than general population.*

88.

On December 17, 2021, Plaintiff Council was transferred from Kilby to Limestone. The retaliation and intimidation that he experienced began from the moment that he arrived. Immediately after stepping off the bus, Lt. Bright called his name, telling him "front and center" and told him he was receiving a Christmas present—placement in solitary confinement. Despite being transferred from Kilby to Limestone as a Medium 9 custody level, meaning he was eligible to be housed in general population, Lt. Bright and other Limestone officers immediately transferred Plaintiff Council to an observation cell. Plaintiff Council was placed in "Statewide lock-up" in cell D-19, a cell covered with mace and gas because it had recently been sprayed, and he was not given any materials to clean the walls.

89.

Plaintiff Council was informed that a Captain Caldwell had ordered him placed on "Statewide lock-up." The intimidation continued in the form of shake downs of his cell from officers. On December 20, 2021, Officers D. Charley and S. Dozier came into his cell and shook me down and found one Newport cigarette that was given to him by another officer. On December 22, 2021, Officer Brewer came into his cell and served him a disciplinary for contraband at 3:55 a.m.

90.

Plaintiff Council informed his mental health staff that he was not supposed to be in segregation based on his custody level and told them about Officer Brewer coming in his cell. He told them that he feared for his life and it was causing him to have anxiety and be depressed.

91.

24

On December 28, 2021, Limestone correctional officers informed him that he had been transferred from Kilby to Limestone because Cheryl Price in the ADOC's central officer had issued a directive ordering him to be transferred to Limestone. These same correctional officers then informed he that he was being housed in Statewide Lockup because the Limestone administration, including the Wardens, Captain Caldwell, Captain McKinsey, the head of mental health, the head of classifications, and the shift supervisors did not want him at Limestone in general population even though my custody level allows for general population.

92.

The Limestone administration had agreed that they wanted him to be placed in Statewide Lock up with no disciplinaries or supporting documentation. In other words, the staff was instructed to do whatever they could to get him placed in "closed custody," meaning in solitary.

3. *In 2022, Limestone officers again repeatedly charged Plaintiff Council with false disciplinary violations to provide pretext for reclassifying him and placing him back in solitary confinement*

93.

In January of 2022 and again in the fall of 2022, Limestone officers fabricated disciplinaries against Plaintiff Council in order to keep him in solitary confinement.

94.

December 17, 2021, Lt. Bright and Plaintiff Council had a verbal altercation and Plaintiff Council cursed Lt. Bright; ten days later on December 27, 2021, Plaintiff Council was served a disciplinary for insubordination.

95.

On January 5, 2022, Plaintiff Council was moved from statewide lock-up in block (D) to Administrative Building block (C). On January 7, 2022, he was released to general population.

96.

On January 7, 2022, Sgt. Smith, who was scheduled to be the hearing officer for the December 27, 2021 insubordination disciplinary, informed Plaintiff Council that Captain

Caldwell had voided the disciplinary and instructed that Plaintiff Council was to be released to general population.

97.

On January 14, 2022, while Plaintiff Council was in general population, Officer Kenneth Noe served him the exact same disciplinary from December 27, 2021 for insubordination and said that it had been reinstated.

98.

On January 28, 2022, over Plaintiff Council's objection that the disciplinary was void and failed to comply with ADOC's Administrative Regulations, Lt. Hanser Whitfield found him guilty. Three days later Warden Streeter approved the previously voided disciplinary charge.

99.

ADOC Admin. Reg. 403, Sect. V.A.7 only affords ten working days for disciplinary hearing on a charge. Delaying the disciplinary hearing from December 27, 2021 to January 28, 2022 clearly exceeded the ten working days; there was no exception under ADOC regulations that would have permitted the disciplinary to be reinstated.

100.

On January 28, 2022, Plaintiff Council was placed into segregation without a detention notification as required by ADOC Administrative regulations nor was he given a reason for being placed in segregation on January 28, 2022. Plaintiff Council was placed in administrative segregation block (C).

101.

January 31, 2022, Warden Streeter approved the voided disciplinary.

102.

On January 31, 2022, Plaintiff Council's mother called Limestone to inquire why he had been placed in segregation on January 28, 2022. Captain Caldwell stated that Plaintiff Council had one disciplinary because Montgomery called and said that he was talking to media and so he

should be locked up and that he had one disciplinary for cursing at another officer on December 17, 2021 (the voided but resurrected disciplinary).

103.

On February 10, 2022, ADOC's media office clarified to Keri Blakinger, a journalist with the Marshall Project (Blakinger is currently a reporter with the *Los Angeles Times*), that ADOC regulations permitted prisoners to communicate with media over the phone and stated that claims that a "prisoner had been placed in solitary for making calls to the media are false."

104.

On February 10, 2022, thirteen days after Plaintiff Council was placed in segregation, he received a detention notification informing him that he was placed in segregation due to an ongoing LESD investigation. This notification was served outside the ADOC seventy-two-hour requirement, requiring that a prisoner receive notification of the reason for his placement in solitary confinement within seventy-two hours. This reason for placing Plaintiff Council in segregation, an LESD investigation, was contrary to the reasons given by Captain Caldwell on January 31, 2022.

105.

On February 21, 2022, Plaintiff Council filed an Admin. Regulation 208 Complaint against ADOC and Limestone supervisory officials alleging retaliation.

106.

On September 28, 2022, Plaintiff Council was placed in segregation for allegedly causing a riot in B dorm.

107.

On September 29, 2022, Plaintiff Council informed his mental health specialist that his life was in danger.

108.

27

On September 30, 2022, Plaintiff Council proclaimed that he was beginning a hunger strike.

109.

October 17, 2022, Lt. Jones took Plaintiff Council to D dormitory and explained that he was there for a disciplinary hearing relating to several disciplinaries that he was charged with because of his actions on September 28, 2022, allegedly causing a right. Lt. Jones said that no witnesses were present because he failed to request witnesses. Plaintiff Council asked when had they ever known him to not request witnesses for his disciplinary hearings. Further, Plaintiff Council said that he had not been served the disciplinaries prior to the hearing. Lt. Jones found Plaintiff Council guilty on all disciplinaries and walked out.

110.

On November 2, 2022, Warden Streeter affirmed the outcome of the disciplinary hearing

111.

On November 8, 2022, Plaintiff Council was provided copies of several disciplinary charges and informed that he had a reclassification hearing the next day.

112.

On November 9, 2022, Plaintiff Council went in front of a reclassification hearing, relating to the disciplinary charges issued against him relating to actions that he allegedly took on September 28, 2022 in B dorm. (1) an ADOC officer alleged that he "incit[ed] other inmates to become aggressive," then "grabbed an officer," "causing the officer to fall to the floor;" (2) in a second disciplinary, Lt. Pelzer lied and stated that he participated in speech and/or social media encouraging a work stoppage; (3) in a disciplinary dated October 3, 2022, Officer Simpson alleged that he failed to obey orders from staff; (4) in a disciplinary dated October 4, 2022, Lt. Pelzer lied and stated that he assaulted an officer; (5) in a disciplinary dated October 3, 2022, Lt. Pelzer lied and stated that he participated in an incident where multiple prisoners gathered

around staff to intimidate them; (6) Plaintiff Council was charged with unauthorized possession

of a phone; and (7) Plaintiff Council was charged with inciting a riot or rioting.

113.

Plaintiff Council contended that he had never been served any of the incident reports that

were the basis of the hearing for disciplinary violations that allegedly occurred on September 28,

2022 in B dorm; nor was he allowed to list or call witnesses for the November 9, 2022 hearing.

The disciplinary reports were based on perjured testimony of Lt. Pelzer and Officer Simpson.

Plaintiff Council asked the hearing officer to ask each witness whether, on September 28, 2022,

(1) did they observe him become aggressive towards any ADOC officer; (2) did they hear him

become violent or incite others towards any ADOC officer?

114.

The reclassification hearing recommended that Plaintiff Council remain in closed custody

because he was accused of assault. However, no weapon was used, there were no injuries, and he

did not demonstrate assaultive behavior.

## COUNTS
## FOR INJUNCTIVE RELIEF AGAINST ADOC COMMISSIONER JOHN HAMM IN HIS OFFICIAL CAPACITY

115.

The following Counts are brought for injunctive relief against Defendant ADOC

Commissioner Hamm in his official capacity, pursuant to *Ex parte Young*, because he has the

requisite connection with ADOC's violations of Plaintiff Robert Earl Council's First and Eighth

Amendment rights detailed below, namely the authority and responsibility to stop or prevent the

violations from occurring, by complying with the relief requested in Plaintiff's upcoming motion

for a temporary restraining order.

116.

Defendant Commissioner Hamm could halt or contribute to halting the constitutional violations pleaded below: Commissioner Hamm has the authority to separate Plaintiff Council and Lt. Pelzer, by simply transferring Plaintiff Council to any other ADOC facility, as ADOC has previously recommended, and where prisoner transfers are and should be a quick and routine administrative matter.

117.

Defendant Commissioner Hamm can also order Plaintiff Council's release from solitary confinement.

## <u>COUNT I</u>
### First Amendment Retaliation

118.

There is a years-long pattern and practice of Lt. Pelzer and other ADOC officials retaliating against Plaintiff Council, which shows a deeply ingrained retaliatory animus on the part of ADOC as an institution, that is ongoing and likely to escalate and lead to mistreatment of and retaliation against Plaintiff, for the filing of this lawsuit, unless this Court intervenes and provides preliminary injunctive relief.

119.

In violation of the First Amendment's prohibition on retaliation, Defendant Commissioner Hamm in his official capacity is liable for injunctive relief under *Ex parte Young*.

120.

By filing this lawsuit Plaintiff Robert Council is currently engaging in First Amendment protected activity that will likely provoke ADOC or Lt. Pelzer to retaliate against him. *See supra,* SOF § I (D) (recent and ongoing protected activity); § I (B) (statements of retaliatory violence by Lt. Pelzer and others).

121.

Because of Lt. Pelzer's ongoing retaliatory animus, and his near constant access to Plaintiff Council's cell in Limestone, as long as Plaintiff Council's transfer from Limestone is denied or delayed, he remains subject to an ongoing and escalating substantial risk of serious injury from assault. *See supra,* SOF § I (F) (ADOC's own awareness of the need to transfer Plaintiff Council).

122.

Lt. Pelzer, in light of a decade-long past practice at Limestone, apparently believes that he can have Plaintiff Council assaulted, and then file fabricated disciplinary charges to cover up the excessive force, without any worry of being disciplined by Warden Streeter, who is a knowing participant in approving the disciplinary findings based on fabricated grounds. *See supra,* SOF § I (E) (decade-long practice of covering up officers' use of excessive force at Limestone, based on anticipated testimony of former Limestone officer(s)).

123.

ADOC's institutional resistance, at the highest levels, to transferring Plaintiff Council away from Lt. Pelzer—despite ADOC's own internal recommendations and documentation of the need to transfer Plaintiff Council away from retaliatory violence at Limestone, *See supra,* SOF § I (F), and despite Plaintiff Council's vigorous efforts at filing lawsuits, and engaging in protected activity to expose Lt. Pelzer's criminal acts and mistreatment of prisoners—can only be explained by retaliatory animus or ADOC's fear of Plaintiff Council's ability to expose their criminal and unconstitutional mistreatment of prisoners if he were free from the dangerous conditions and solitary confinement at Limestone.

124.

A person of "ordinary firmness" in Plaintiff Council's shoes would have been deterred from filing this lawsuit due to ADOC's denial or delay of the transfer out of Limestone. ADOC's denial or delay of transferring Plaintiff Council out of Limestone and away from Lt. Pelzer poses

31

a substantial risk of Plaintiff Council being assaulted by correctional officers or inmates acting

on their behalf while he remains in Limestone. This is demonstrated by the correctional officers'

threats of violence towards Plaintiff Council, attempts at causing violence to him, harassment of

Plaintiff Council and his friends and allies, and the ongoing, fabricated disciplinary charges and

solitary confinement, for up to eighteen months at a time, imposed on Plaintiff Council.

125.

A person of ordinary mental fortitude, who suffered the beatings and years of solitary

confinement that Plaintiff Council endured, would likely be completely debilitated by trauma

and mental illness or worse. Despite the violence and abuse that Plaintiff Council has survived,

he has never responded with violence, and has been a strong and consistent advocate of peaceful

relations between his fellow inmates and ADOC.

126.

ADOC's pattern of retaliating against Plaintiff Council is deeply ingrained, currently

ongoing, and likely to escalate upon the filing of this lawsuit: preliminary injunctive relief is

necessary to protect the mental health and physical safety, and the First Amendment rights, of

Plaintiff Council.

### <u>COUNT II</u>
### Eighth Amendment Failure to Protect
### from substantial risk of assault or murder
### by prison guards or inmates acting at their behest

127.

ADOC's deliberate indifference towards Plaintiff Council's conditions of confinement at

Limestone that fail to provide reasonable safety from violence and pose an ongoing and quickly

escalating substantial risk of assault or murder of Plaintiff Council by Lt. Pelzer or other officers

or inmates acting at his behest; is an "obvious" violation of the Eighth Amendment, that

"amounts to gratuitous infliction of 'wanton and unnecessary' pain that our precedent clearly

prohibits." *Hope v. Pelzer*,[1] 536 U.S. 730, 737-38 (2002) (emphasis added). *Accord Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (similar). Moreover, deliberate indifference, and alternatively malice, suffices for conditions claims for "reasonable safety" from any substantial risk of serious injury from assault by other inmates, *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994), or by correctional officers. *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (assuming without deciding that deliberate indifference suffices); *Wilson* v. *Seiter*, 501 U.S. 294, 303 (1991) (generally holding that a deliberate indifference applies to all conditions of confinement claims, and rejecting the prison administrators' arguments that malice should apply instead).

128.

In violation of the Eighth Amendment, Defendant Commissioner Hamm is liable for injunctive relief under *Ex parte Young*, because Plaintiff Robert Earl Council is currently suffering ongoing, escalating, substantial risk of being assaulted or killed by Lt. Pelzer or other officers or inmates acting at his behest, so long as he remains at Limestone.

129.

ADOC's institutional deliberate indifference and retaliatory malice towards Plaintiff Robert Earl Council's unreasonably dangerous conditions of confinement at Limestone continues unabated and is likely to escalate with the filing of this lawsuit.

130.

Until Plaintiff Council is transferred away from Limestone and Lt. Pelzer, there is a substantial likelihood of Plaintiff Council being again, maliciously and gratuitously assaulted, experiencing severe pain and suffering from the beating, the triggering of his anxiety and PTSD, and serious or even fatal injuries.

## COUNT III
## Eighth Amendment

---

[1]    The current Lt. Jeremy Pelzer is the son of the named defendant in *Hope v. Pelzer,* Sgt. Mark Pelzer, who also worked at Limestone correctional facility.

**protection from solitary confinement's effect on Plaintiff Robert Earl Council's anxiety and PTSD**

131.

The solitary confinement of Plaintiff Council, which is ongoing and likely to continue for up to eighteen months, violates the Eighth Amendment's protection from conditions of confinement that trigger or cause a substantial worsening of Plaintiff Council's anxiety and PTSD.

132.

Plaintiff has been diagnosed with anxiety and PTSD because of the many years of solitary confinement and numerous beatings at the hands of correctional officers he has suffered while in ADOC's custody.

133.

ADOC's institutional and ongoing deliberate indifference to Plaintiff's extended placements in solitary confinement and the negative effects on his mental health, will continue unabated, causing irreparable damage to Plaintiff Robert Earl Council each day he remains confined in solitary.

**Count IV**
**Fourteenth Amendment Procedural Due Process**
**for meaningful review of indefinite solitary confinement**

134.

Plaintiff Council is currently housed in solitary confinement at Limestone, and has been since October 15, 2023.

135.

ADOC is likely to keep Plaintiff Council in solitary for an indefinite period of a year or more, without providing any review of whether he should be let out of solitary, in violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment; unless and until Defendants are enjoined from doing so by this Court pursuant to *Ex parte Young*.

136.

34

Plaintiff Council has a protected liberty interest in release from solitary because the conditions of his solitary confinement are atypically severe, and because ADOC regulations establish a reasonable expectation that an inmate will only be held in solitary if certain specified criteria are satisfied, which Plaintiff Council does not satisfy.

137.

As of today, Plaintiff Council has not received any review of his solitary confinement.

138.

Plaintiff will almost certainly soon receive notice from ADOC of a reclassification of his status to closed custody, which may result in his being sentenced to up to eighteen months of solitary confinement, as shown by the pattern of prior times Plaintiff has been held for prolonged periods in solitary, with no indication that the pattern will stop unless this Court intervenes.

139.

Moreover, Limestone has a decade-long and ongoing pattern and practice of imposing solitary confinement without due process, *see supra* SOF§ I (E) (anticipated testimony from former Limestone correctional officer(s), as further illustrated by the example of Juan Caples. *See infra.*

140.

ADOC's pattern and practice of denying due process, goes back over 13 years, and continues today, including roughly 152 inmates currently placed in solitary confinement at Limestone an indefinite duration with no process to review their prolonged solitary confinement.

141.

The Limestone segregation unit has three dorms, B, C, and D, currently holding approximately 152 prisoners.

142.

The people currently housed in Dorm B are on average, in solitary for at least six months, and usually indefinitely.

143.

In dorms C and D, the people are housed in solitary for disciplinary charges usually for a couple months, but then fabricated enemy conflicts or other pretextual grounds are used to hold these inmates indefinitely.

144.

Direct evidence of ADOC's lack of any review of these prolonged periods of solitary confinement, comes from a Limestone correctional officer, who indicated today that he could not even remember the last time there had been a review of an inmate's placement in solitary confinement.

145.

ADOC's own regulations, on paper, require that an Institutional Review Board ("ISRB") conduct a weekly review of the basis for a prisoner' placement in segregations, showing ADOC's intentional violation of the due process rights of inmates in solitary confinement.

**Juan Caples' two and a half-year solitary confinement at Limestone through October 2023, and direct evidence of due process violations from high-up ADOC officials,**

146.

Another Limestone prisoner, Juan Caples, was held in solitary confinement at Limestone for approximately two and a half years, from January 2021 until his release from solitary on or around October 27, 2023, after a demand letter was sent by an attorney on his behalf to Commissioner Hamm and ADOC's General Counsel outlining the constitutional violations inflicted on Caples by his solitary confinement.

147.

Since his placement in solitary confinement began at Limestone, Caples was never permitted to speak to an ISRB board reviewing his placement in solitary nor did he ever receive notice that a periodic review had been conducted to consider removing him from solitary confinement.

148.

Indeed, Caples was informed by Limestone officials that his placement in solitary confinement was indefinite and would not be subject to any review: when Caples asked Limestone classification officer Overton about removing him from solitary confinement, Officer Overton told him that her hands were "tied" by higher up ADOC officials, either Deputy Commissioner Dr. Wendy Williams or ADOC's Institutional Coordinator.

149.

Upon information and belief, these same individuals in ADOC's Montgomery headquarter are also blocking any transfer of Plaintiff Council away from Limestone Lt. Pelzer's violent retaliation.

150.

ADOC will almost certainly keep Plaintiff Council in solitary for an indefinite period of a year or more, without providing any review of whether he should be let out of solitary, in violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment, unless and until Defendants are enjoined from doing so by this Court.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Earl Council requests that this Court grant judgment against Defendant Commissioner Hamm and grant Plaintiff Council's upcoming motion for a temporary restraining order to prevent ADOC from depriving Plaintiff Council of his constitutional rights, and health and safety, by enjoining Defendant Hamm from

(1) halting or interfering with the immediate transfer of Plaintiff Council away from Limestone, and

(2) holding Plaintiff Council in solitary confinement

(3) any other and further relief to be requested or ordered

(4) reasonable attorney fees, costs and expenses under 42 U.S.C. § 1988.

Respectfully submitted, this 13th day of November 2023.

<div style="margin-left: 50%;">

/s/ *Andrew Menefee*
Andrew Menefee
**MENEFEE LAW**
Alabama Bar No. 1529W23S
1250 Connecticut Ave NW
Ste. 700
Washington D.C., 20036
202-381-0143
amenefee@menefee-law.com

</div>

## VERIFICATION OF COMPLAINT

I, attorney Andrew Menefee, declare under penalty of perjury pursuant to 28 U.S.C.

§ 1746, that the factual allegations in the above First Amended Complaint are true and correct

based on a reasonable belief supported by a reasonable investigation into the relevant witnesses

and documents.

I am above the age of 18 and of sound mind, competent to make this statement.

Executed on November 13th, 2023.


_____

Andrew Menefee