# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **Robert Earl Council,** | |
| *Plaintiff* | **Civil Action No. 2:23-cv-00658** |
| **v.** | |
| **Commissioner John Hamm, in his official capacity, for the Alabama Department of Corrections, Dr. Wendy Williams, in her official capacity, Defendant Edward Ellington, in his official capacity, Warden William Streeter, in his official capacity, Warden Chadwick Crabtree, in his official capacity.** | |
| *Defendants.* | |

## BRIEF IN SUPPORT OF PLAINTIFF ROBERT EARL COUNCIL'S MOTION FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Plaintiff Council moves this court for a temporary restraining order and preliminary injunction preventing Defendant Commissioner John Hamm of the Alabama Department of Corrections ("ADOC") and other supervisory officials and wardens at Limestone Correctional Facility ("Limestone"), in their official capacities, from retaliating against Plaintiff Council in violation of his First, Eighth, and Fourteenth Amendments rights by exposing Plaintiff Council to a substantial and urgent risk of being assaulted or murdered by Lt. Jeremy Pelzer, other Limestone correctional officers, and inmates acting at their behest and who have constant access to the solitary confinement cell where Plaintiff Council is housed at Limestone.

Plaintiff Council's release from solitary confinement is also necessary to prevent immediate and irreparable damage to Plaintiff Council's mental health, PTSD, and anxiety, which are currently being triggered and substantially worsened by his solitary confinement.

Plaintiff Council is highly likely to prevail on his First, Eighth, and Fourteenth Amendment claims, and preliminary relief is necessary to prevent imminent and irreparable injury to the health and safety of Mr. Council and to protect his rights under the United States Constitution. As shown below, the four factors or elements for preliminary relief are clearly satisfied. *See below*, §I (merits); §II (imminent, irreparable harm); §III (balance of harms, and the public interest). The PLRA's requirements for preliminary injunctive relief are satisfied. *See infra.*, §IV.

## Legal Standard

To obtain a temporary restraining order or preliminary injunction Plaintiff is required to establish (1) a substantial likelihood of success on the merits; (2) irreparable harm absent an injunction; (3) that the threatened injury outweighs any harm the injunction might cause the defendant; and (4) considerations of the public interest. *See Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Swain v. Junior*, 958 F.3d 1081, 1088 (11th Cir. 2020).

Plaintiff Council's requested Order for injunctive relief is attached. [Att. 2]. Pursuant to Fed. R. Civ. P. 65 (b)(1)(A), Plaintiff's First Amended Verified Complaint, the declarations from Plaintiff Council [Doc. no.'s 1-1 & 1-2], and the attached evidence [*see* Pl.'s Mot. for TRO/PI "Index of Attachments and Evidence," Attachments 3-8] establish "specific facts … [that] clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Civ. P. 65 (b)(1) (A). *See below* §II (imminent, irreparable harm).

## ARGUMENT AND CITATION TO AUTHORITIES

I.    **Clear success on the merits of Plaintiff Council's claims**

A.    **Count 1: First Amendment retaliation, including threat of violence, solitary confinement, and other severe mistreatment.**

"To state a First Amendment retaliation claim, the inmate must allege that: (1) his speech was constitutionally protected; (2) the inmate suffered adverse action such that the administrator's allegedly retaliatory conduct would likely deter a person of ordinary firmness from engaging in such speech; and (3) there is a causal relationship between the retaliatory action and the protected speech." *Harper v. Admin. Lieutenant*, 857 F. App'x 551, 554 (11th Cir. 2021) (quotation marks and citation omitted). "The gist of a retaliation claim is that a prisoner is penalized for exercising the right of free speech." *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989)

Protected activity. The filing of this lawsuit by Plaintiff Council is First Amendment protected activity that will likely attract significant attention in newspapers or other media and incite Lt. Pelzer and others to retaliate against Plaintiff Council for exposing Lt. Pelzer's criminal and unconstitutional retaliatory violence [*See* FAC § I (D) (recent and ongoing protected activity)]

Retaliatory causation. Direct and overwhelming circumstantial evidence, including the close temporal proximity with Plaintiff Council's ongoing protected activity, and ADOC's past pattern and practice of creating pretextual justifications for assaulting Plaintiff and placing himf in solitary  show retaliatory intent on the part of Lt. Pelzer and the other Limestone officers and inmates acting at his behest to harm Plaintiff Council. *See*  [FAC Doc. no. 2 SOF § I (A) (October 15, 2023, fabricated charges showing pretext for retaliation); SOF § I (B) (recent statements of retaliatory violence by Lt. Pelzer and others); *see also supra* SOF § II (detailed chronology from 2019 onwards showing ADOC's pretext for retaliatory animus); Att. 4 Aff. of Larry Jones (retaliatory threats of violence by Lt. Pelzer to get Plaintiff Council thrown in solitary or transferred away from Limestone because of all of his lawsuits); Att. 5 Aff. of Travis

Griggs (retaliatory macing by Lt. Pelzer at a disciplinary hearing); Att. 6 (documented retaliation from Lt. Pelzer by attorney Gespass in letters to Commissioner Hamm and other ADOC officials, seeking a transfer for Plaintiff); Att. 7 (Plaintiff's February 2022 complaint of retaliatory solitary at Limestone); *see generally* Plaintiff's Dec. 1 (Doc. no. 1-1) and Dec. 2 (Doc. no. 1-2).

Severity of adverse treatment and the chilling effect on Plaintiff Council's First Amendment freedoms. A "person of ordinary firmness" who endured what ADOC is inflicting on Plaintiff Council would be completely chilled from advocating for prisoner rights or filing or pursuing this lawsuit. Given the years of retaliatory assaults, many years in solitary confinement, and other severe harassment, for which ADOC is responsible, an ordinary person would be too afraid that the beatings and solitary would continue or escalate to file this lawsuit. In all reality, a person of ordinary mental fortitude, who suffered what Plaintiff Council endured, would likely have been completely debilitated by trauma and mental illness, or worse. Despite the violence and abuse that Plaintiff Council has survived, he has never responded with violence, and has been a strong and consistent advocate of peaceful relations between the inmates and ADOC. As discussed in more detail below, the likelihood of severe retaliation for the filing of this lawsuit establishes irreparable harm and justifies preliminary relief.

**B.    Count II: Eighth Amendment, risk of assault or murder, by officer or inmate.**

ADOC's deliberate indifference towards Plaintiff Council's conditions of confinement—its failure to provide reasonable safety from violence and threats that pose an ongoing and quickly escalating substantial risk of assault or murder of Plaintiff Council by Lt. Pelzer or other officers or inmates acting at his behest—is an "*obvious*" violation of the Eighth Amendment, that "amounts to gratuitous infliction of 'wanton and unnecessary' pain that our precedent *clearly*

prohibits." *Hope v. Pelzer*, 536 U.S. 730, 737-38 (2002) (qualified immunity case, emphasis added); *accord Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020) (similar). Deliberate indifference suffices for conditions claims for "reasonable safety" from any substantial risk of serious injury from assault by other inmates, *Farmer* v. *Brennan*, 511 U.S. 825, 834 (1994), or by correctional officers. *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (assuming without deciding that deliberate indifference suffices); *Wilson* v. *Seiter*, 501 U.S. 294, 303 (1991) (generally holding that a deliberate indifference applies to all conditions of confinement claims, and rejecting the prison administrators' arguments that malice should apply instead).

According to *Hope*, when applying the Eighth Amendment's prohibition on wanton and unnecessary pain and suffering, courts "making this determination *in the context of prison conditions,* [...] *must* ascertain whether the officials involved acted with 'deliberate indifference' to the inmates' health or safety. 536 U.S. at 737-38 (emphasis added, citing *Hudson* v. *McMillian*, 503 U.S. 1, 8 (1992)). As elaborated by *Taylor*, the "'obvious cruelty inherent' in putting inmates in certain wantonly 'degrading and dangerous'" situations clearly establishes an Eighth Amendment violation, especially when (1) there is no evidence "that the conditions of [Plaintiff's] confinement were compelled by necessity or exigency," and (2) there is no "reason to suspect that the conditions of [Plaintiff's] confinement could not have been mitigated, either in degree or duration." *Taylor*, 141 S. Ct. at 54 (citation omitted).

ADOC's deliberate indifference towards Plaintiff Council by refusing to transfer or protect Plaintiff Council from repeated, unnecessary assaults by correctional officers, their threats and  attempts to solicit inmate gangs to murder Plaintiff Council, shows an obvious constitutional Eighth Amendment violation; for several years Plaintiff Council's lawsuits, and his attorney Gespass's letters, provided abundant, documented evidence of Lt. Pelzer's

retaliation and threats against Plaintiff Council. At any point ADOC could have simply separated the two, by transferring Plaintiff Council away from Limestone to any other facility, as he repeatedly requested.

Because of the extended time ADOC Commissioner John Hamm and his predecessor had to make a deliberate decision about whether to transfer Plaintiff Council away from Limestone, where there was no "necessity or exigency" nor any "reason to suspect that the conditions of [Plaintiff's] confinement could not have been mitigated, either in degree or duration," by ordering a routine prisoner transfer between facilities, ADOC's deliberate indifference is an obvious Constitutional violation. *Taylor*, 141 S. Ct. at 54 (citation omitted).

Moreover, Lt. Pelzer, in light of a decade-long past practice at Limestone, believes that he can have Plaintiff Council assaulted and file fabricated disciplinary charges to cover up the excessive force without being disciplined by Warden Streeter, who is a knowing participant in approving the disciplinary findings based on fabricated grounds. *See* [FAC Doc. no. 2 ¶¶ 41-45 SOF § I (E) ( (decade-long practice of covering up officers' use of excessive force at Limestone based on anticipated testimony of (a) former Limestone officer(s))].

Plaintiff Council complained of the retaliation, repeated placement in solitary confinement, and threats of physical violence that he faced to Commissioner Hamm and the ADOC's Institutional Coordinator numerous times but they refused to transfer him. Plaintiff Council's attorney Gespass sent a letter dated November 8, 2019, to Gary Willford, the assistant attorney general for ADOC Legal Division, detailing Lt. Pelzer's retaliation against Plaintiff Council and his friend Elizabeth Davenport [Att. 6 p. 4-6]; attorney Gespass also raised these concerns about Plaintiff Council's safety at Limestone, the threat from Lt. Pelzer, and the need to

transfer him away from Limestone in letters dated January 9, 2020, and April 10, 2023 to
ADOC's Commissioner and other top ADOC officers. [Att. 6 p. 1-3].

Plaintiff, pro se, filed a retaliation complaint about solitary confinement at Limestone in
February 2022 [Att. 7], and a § 1983 lawsuit with First Amendment retaliation and other claims
against Lt. Pelzer, on September 28, 2020, [Att. 8 (Robert Earl Council's pro se Complaint)
(Case no. 2:20-cv-01439 CLM-JHE.); Doc. no. 1-2 ¶ 62]. Plaintiff Council filed a complaint on
January 17, 2020 to then Commissioner Dunn [Doc. no. 1-1 ¶ 21] and a state habeas petition
challenging his indefinite placement in solitary confinement on December 11, 2017, [Doc. no. 1-
2 ¶ 2].

C.     Count III: Eighth Amendment, solitary confinement despite Plaintiff
       Council's P.T.S.D. and anxiety.

As of at least the emailing of Plaintiff Council's demand letter to Commissioner Hamm
and ADOC's General Counsel, on November 6, 2023 [Att. 3], ADOC has been on notice that
Plaintiff Council has PTSD and anxiety that is being triggered and exacerbated by his placement
in solitary confinement. The solitary confinement of Plaintiff Council, which is ongoing and
likely to continue for up to eighteen months, violates the Eighth Amendment's protection from
conditions of confinement that trigger or cause a substantial worsening of Plaintiff Council's
anxiety and PTSD.

Plaintiff has been diagnosed with anxiety and PTSD because of the many years of
solitary confinement and numerous beatings at the hands of correctional officers he has suffered
while in ADOC's custody. ADOC's institutional and ongoing deliberate indifference to
Plaintiff's extended placements in solitary for over seven years since 2014 confinement and the
negative effects on his mental health, will continue unabated, causing irreparable damage to
Plaintiff Council each day he remains confined in solitary.

ADOC officials have been on notice that continuing to detain a prisoner in solitary confinement who suffers from a serious mental illness violates the Eighth Amendment. *See Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1245 (M.D. Ala. 2017). The *Braggs* court concluded, based on the testimony of "the experts, clinicians who work for ADOC, and even Associate Commissioner Naglich herself," that prisoners who suffer from a serious mental illness "should never be placed in segregation in the absence of extenuating circumstances." *Id.*[1] And, the court noted, "even in extenuating circumstances, decisions regarding the placement should be with the involvement and approval of appropriate mental-health staff, and the prisoners should be moved out of segregation as soon as possible and have access to treatment and monitoring in the meantime." *Id.* at 1247; *see generally Gates v. Collier*, 501 F.2d 1291, 1311 (5th Cir. 1974) (finding that "there is a line where solitary confinement conditions become so severe that its use is converted from a viable prisoner disciplinary tool to cruel and unusual punishment," and upholding an injunction that limited use of segregation unit to 24 hours and required in part adequate heat, ventilation, and sanitary conditions).

**D.     Count IV: Procedural due process of the Fourteenth Amendment requires timely review of solitary confinement, but Limestone is currently holding Plaintiff and *approximately 152 others in solitary with no such review*.**

---

[1]     The Supreme Court has said that solitary confinement imposes "a further terror" even over and above a death sentence. *In re Medley*, 134 U.S. 160, 170 (1890). In 2015, Justice Kennedy observed that "the penal system has a solitary confinement regime that will bring you to the edge of madness, perhaps to madness itself." *Davis v. Ayala*, 135 S. Ct. 2187, 2209 (2015) (Kennedy, J., concurring). Contemporary research confirms that solitary confinement has devastating psychological and physical effects. *See, e.g., Porter v. Clarke*, 923 F.3d 348, 356 (4th Cir. 2019). As the Fourth Circuit summarized one group of researchers on the point, "there is not a single study of solitary confinement wherein non-voluntary confinement that lasted for longer than 10 days failed to result in negative psychological effects." *Id.* at 441-42. There is a consensus among psychiatrists, psychologists, and other scientists who study solitary confinement: solitary confinement both exacerbates pre-existing psychological disorders and is itself the genesis of such disorders. These effects range from paranoia to depression to severe cognitive dysfunction.

The Due Process Clause requires that prisoners who are deprived of a "liberty interest" due to the imposition of an "atypical and significant hardship," such as solitary confinement, are entitled to procedural protections "as the particular situation demands." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). The Supreme Court has made clear that, at a minimum, the Due Process Clause requires periodic, meaningful hearings when subjecting a prisoner to solitary confinement. *See Hewitt v. Helms*, 459 U.S. 460, 477 n.9 (1983). Courts evaluate the procedural protections demanded by the Fourteenth Amendment using the *Mathews v. Eldridge* balancing test. 424 U.S. 319 (1976).

Applying the *Mathews* factors in *Quintanilla v. Bryson*, 730 F. App'x 738, 744 (11th Cir. 2018), the Eleventh Circuit held that periodic reviews "must be meaningful," "cannot be a sham or a pretext," and must actually evaluate "whether confinement in administrative segregation remains necessary in light of current facts."

ADOC's Admin. Reg. 436 provides that an Institutional Review Board ("ISRB") comprised of a warden, a classification officer, a chaplain, and a mental health professional, will conduct a weekly review of the status of all prisoners confined to segregation, a review that prisoners are permitted to attend, and recommend a timeframe for the prisoner to transition from segregation to general population. Admin. Reg. 436(V).

A ISRB review board at Limestone has never reviewed Plaintiff Council's placement in solitary. [FAC. Doc no. 2 ¶¶ 137-138]; [Doc. no 1-2 ¶ 2]. The ADOC does not review Plaintiff Council's placement in solitary confinement in light of current information, nor recommend the steps he must take to return to general population; rather any review of his placement in solitary is a sham and not meaningful.

Recent evidence that this failure to review Plaintiff Council's placement in solitary is part of a long-standing practice or procedure that will continue. Currently, many of 152 prisoners in Limestone's three segregation dorms are serving indefinite sentences in segregation for years at a time without any review. [FAC Doc no. 2 ¶¶ 140-145]. Yesterday, a Limestone correctional officer stated that the lack of any review by an ISRB was the most common complaint voiced by prisoners in Limestone's segregation block because many prisoners could not even remember the last time there had been a review of their indefinite sentences and placement in solitary confinement. [*Id.*].

Other evidence that this is a routine pattern and practice at Limestone comes from Juan Caples, an inmate friend of, and FAM activist with Plaintiff Council; Caples was held in solitary confinement as retaliation for participating in FAM labor strikes for approximately two and a half years, including at Limestone from January 2021 until his release from solitary on October 27, 2023, after the ADOC rereviewed Caples' attorney's October 18, 2023 demand letter. [*Id.* ¶¶ 145-150]. The ADOC and Limestone officials had never reviewed Caples' placement in solitary confinement. [*Id.* ¶ 147]. Because ADOC and Limestone officials are not even bothering to review Plaintiff Council's ongoing placement in solitary confinement, they fail to satisfy the requirements of the Due Process Clause. *See Hewitt*, 459 U.S. at 468.

## II.      Imminent, irreparable harm to Plaintiff Robert Earl Council.

As shown *supra* in §I (A)-(D) the conditions of Plaintiff Council's confinement at Limestone, where Lt. Pelzer and the officers and inmates who work for him have constant access to him, poses a substantial, ongoing, escalating risk of serious injury to the health, safety, and life of Plaintiff Council. *See* FAC SOF § I (E) (decade-long practice of covering up officers' use of excessive force at Limestone, based on anticipated testimony of (a) former Limestone officer(s)); *id.* SOF § I (B) (recent statements of retaliatory violence by Lt. Pelzer and others); *see also id.*

SOF § II (detailed chronology from 2019 onwards showing ADOC's retaliation against Plaintiff); Att. 4 Aff. of Larry Jones (retaliatory threats of violence by Lt. Pelzer to get Plaintiff Council thrown in solitary or transferred away from Limestone because of all of his lawsuits); Att. 5 Aff. of Travis Griggs (retaliatory macing by Lt. Pelzer at a disciplinary hearing); Att. 6 (documented retaliation from Pelzer by attorney David Gespass in letters to Commissioner Hamm and other ADOC officials, seeking a transfer for Plaintiff).

Plaintiff Council is currently suffering and will continue to suffer an unconstitutional condition of confinement, so the irreparable injury requirement is easily satisfied by this "ongoing violation." *Farmer*, 511 at 846 (citing *Hutto v. Finney*, 437 U.S. 678 (1978) as an example of appropriate injunctive relief an "order designed to halt 'an ongoing violation' in prison conditions that included extreme overcrowding, rampant violence, insufficient food, and unsanitary conditions"). Moreover, a sufficient risk of future injury, even in the absence of any present injury justifies injunctive relief. *Helling v. McKinney*, 509 U.S. 25, 33–35 (1993) (compiling examples).

In addition, Defendants are on notice of the obvious danger to Plaintiff Council due to his unique characteristics as an outspoke prisoner rights' advocate that places him in danger of retaliation from ADOC supervisors and correctional officers. Prison officials may be on notice of a danger to a particular prisoner because a prisoner's personal characteristics make the risk obvious. *Farmer,* 511 U.S. at 842–43. In *Farmer* the Supreme Court remarked that a prison guard's state of mind is "subject to demonstration in the usual ways, including inference from circumstantial evidence" and may be inferred "from the very fact that the risk was obvious." *Id.* at 842. The Court noted that the risk of sexual assault to the prisoner was obvious because he was a non-violent, transgender prisoner who "because of [his] youth and feminine appearance

[was] likely to experience a great deal of sexual pressure in prison." *Id*. at 848–49. For example, a prisoner's personal characteristics, such as one's slight statute or sexual identity, may make him particularly vulnerable to assault. *See e.g., Farmer*, 511 U.S. at 848; *Greene v. Bowles*, 361 F.3d 290, 294–95 (6th Cir. 2004). In addition, prison officials may also be held liable if they fail to act on a specific warning of danger to a particular prisoner. As the Third Circuit has stated, "prison officials should, at a minimum, investigate each allegation of threat of violence." *Travillion v. Wetzel*, 765 F. App'x 785, 794 (3d Cir. 2019); *see also Case v. Ahitow*, 301 F.3d 605, 606–07 (7th Cir. 2002) (defendants could be held liable where they knew another prisoner had it in for the plaintiff and didn't act to keep them separate).

Both Plaintiff Council's unique characteristics as an outspoken prisoner advocate and the numerous threats on his life that he has communicated to the ADOC supervisory officials places them on notice of the danger to Plaintiff Council's life.

Finally, Plaintiff is suffering, ongoing and escalating pain and suffering, and triggering and worsening of his PTSD and anxiety, from being housed in solitary and from being housed at Limestone where he is exposed to the threats, attempts, and assaults of Lt. Pelzer and his officers.

III.     **Balance of harms and the public interest**

   A. **The threatened harm to Plaintiff Council vastly outweighs any possible harm for ADOC in providing the requested relief.**

Plaintiff Council will suffer irreparable harm in the absence of relief from this Court. By contrast, ADOC will suffer no harm from the requested temporary restraining order and preliminary injunction. ADOC has no legal right and no cognizable interest in housing Plaintiff Council at Limestone while Lt. Pelzer is a supervisory official there and he and other Limestone

officers are subjecting Plaintiff Council to retaliatory violence, sham disciplinary proceedings, and placement in solitary confinement without justification. If anything, the requested preliminary injunctive relief will enhance the safety of ADOC facilities by decreasing the risk of harm to Plaintiff Council from retaliatory violence and excessive force at the hands of correctional officers. *See Tay v. Dennison*, 457 F. Supp. 3d 657, 688 (S.D. Ill. 2020) ("The Court will only direct Defendants [to] do their job: protect Plaintiff from abusive staff and prisoners and house [him] appropriately based on an individualized determination of [his] needs."); *Farmer*, 511 U.S. at 830 (prison officials are obligated to protect prisoners "from violence at the hands of other prisoners," including taking preventative measures when they are aware an inmate faced a substantial risk of serious harm).

Thus, as compared to the harm that will befall Plaintiff Council, the burden that would be imposed on ADOC is extremely low, and the harm nonexistent, as ADOC is already obligated to come up with an individualized housing plan for individuals in its custody "in accordance with its affirmative duty to protect [them] from a substantial risk of harm." *Tay*, 457 F. Supp. 3d at 688 (citing *Farmer*, 511 U.S. at 833-84).

Because the entry of an injunction will not harm ADOC, the security required by Fed. R. Civ. P. 65(c) should be set at zero. *See, e.g., Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011) ("The district court retains discretion as to the amount of security required, if any." (internal quotation marks omitted)); *Doctor's Assocs., Inc. v. Stuart*, 85 F.3d 975, 985 (2d Cir. 1996) ("[T]he district court did not abuse its discretion in dispensing with the bond."); *Fox Television Stations, Inc. v. FilmOn X LLC*, 966 F. Supp. 2d 30, 52 (D.D.C. 2013) ("It is well settled that Rule 65(c) gives the Court wide discretion in the matter of requiring security." (citation omitted)).

### B.  A TRO/Preliminary Injunction Will Serve the Public Interest

The Supreme Court has recognized that "[t]he third and fourth factors, harm to the opposing party and the public interest, merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418, 435 (2009). "It is always in the public interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F. Supp. 2d 90, 105 (D.D.C. 2012) *accord Lamprecht v. F.C.C.*, 958 F.2d 382, 390 (D.C. Cir. 1992) (explaining that "a [government] policy that is unconstitutional would inherently conflict with the public interest"). Here, the public interest would be vindicated by respecting Plaintiff Council's civil rights and requiring that Defendant ADOC stop placing Plaintiff Council in solitary confinement at Limestone and placement in solitary confinement that deteriorates his mental health and protect Plaintiff Council from retaliatory violence at the hands of Lt. Pelzer. *See Fraihat v. U.S. Immigr. & Customs Enf't,* 445 F. Supp. 3d 709, 749 (C.D. Cal. 2020) (in the context of prisoners exposed to public health emergency, nothing "[…] there can be no public interest in exposing vulnerable persons to increased risks of severe illness and death.").

## IV.   The PLRA's requirements are satisfied.

The PLRA, 42 U.S.C. § 1997e, provides that a court may not grant prospective or preliminary injunctive relief with respect to prison conditions unless the court "finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). Whether the relief meets the PLRA's "need-narrowness-intrusiveness" requirement is "determined with reference to the constitutional violations established by the specific plaintiffs before the court." *Brown v. Plata*, 563 U.S. 493, 531 (2011). In applying these requirements, a court must "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system." 18 U.S.C. § 3626(a)(1)(A).

All of the relief requested here by Plaintiff Council [*see* Att. 2 (proposed order)] satisfies the PLRA's need-narrowness-intrusiveness requirement. The three components of the requirement (need, narrowness, intrusiveness) blend into a single inquiry: "is the provision necessary to correct the constitutional violation established by the plaintiffs?" *Braggs v. Dunn*, 383 F. Supp. 3d 1218, 1252 (M.D. Ala. 2019) (Thompson, J.).

Plaintiff Council's requests are necessary to (1) protect Plaintiff Council from retaliation from Lt. Pelzer and (2) ensure that ADOC's executive leadership will take steps to protect Plaintiff Council from retaliation by Lt. Pelzer and other correctional officers going forward. The provisions requested by Plaintiff Council in his TRO are narrowly drawn and extend no further than necessary to correct the defendant's constitutional violation and protect Plaintiff Council against the risks and retaliation he faces as an incarcerated advocate engaged in First Amendment protected activity.

At the outset, three overarching reasons support finding that these are the least intrusive means necessary to correct the violations. First, despite ample opportunities to transfer Plaintiff Council and discipline Lt. Pelzer and numerous written requests by Plaintiff Council's attorneys to ADOC's executive leadership to take the same steps, ADOC has failed to transfer Plaintiff Council away from Limestone and remove him from in solitary confinement and Lt. Pelzer's unconstitutional and illegal retaliation.

Second, the cyclic and ongoing retaliation that both Lt. Pelzer and the ADOC subjected Plaintiff Council to, including the recent October 15, 2023 macing, the October 30, 2023 sham disciplinary proceeding, and imminent reclassification hearing that will keep Plaintiff Council in solitary confinement for another six to eighteen months, shows that the requested relief remains urgent and necessary.

Third, the evidence of ADOC's deprivations of Plaintiff Council's constitutional rights is sufficiently pervasive to support findings of that he faces potential and the need for systemwide relief by enjoining all named ADOC defendants, as opposed to merely defendants at Limestone. Some courts have found that harm to only one or two inmates at separate facilities is insufficient to support a systemwide remedy. *See Lewis v. Casey*, 518 U.S. 343, 359-60 (1996) (a finding that two inmates were harmed at two separate facilities was inadequate, without more, to conclude that a systemwide violation existed); *Thomas v. Bryant*, 614 F.3d 1288, 1324 (11th Cir. 2010) (because "[t]he district court held that the DOC violated the constitutional rights of only two inmates," a non-systemic injunction was appropriate).

Both *Lewis* and *Thomas* can be distinguished from this case. Here, the retaliation that Plaintiff Council faced was not limited to a single facility, rather the retaliation was made possible by ADOC's executive leadership in Montgomery refusing to protect and transfer Plaintiff Council away from Limestone, keeping him confined for years in a place where he was vulnerable to retaliation and physical assault by Lt. Pelzer. *See* [FAC Doc no. 2 ¶¶ 148; Att. 4, Aff. of Larry Jones, at 4-5].

Plaintiff Council complained of Lt. Pelzer's retaliation, repeated placement in solitary confinement, and threats of physical violence to Commissioner Hamm and the ADOC's Institutional Coordinator numerous times but they refused to transfer him. Plaintiff Council's attorney Gespass sent letters dated November 8, 2019,  July 10, 2019, January 9, 2020, and April 10, 2023 to ADOC's Commissioner and Institutional Coordinator, Cheryl Price, and other top officials requesting that they transfer Plaintiff Council away from Limestone due to documented threats of retaliatory violence by Lt. Pelzer**,** on April 10, 2023 (to Commissioner John Hamm), January 9, 2020, and November 8, 2019. [Att. 6] Plaintiff Council filed a complaint on January

17, 2020 to then Commissioner Dunn [Doc. no. 1-1 ¶ 21], a state habeas petition on December 11, 2017, [Doc. no. 1-2 ¶ 2], and a federal lawsuit on September 28, 2020-all of them alleging the retaliation he faced from. [*Id*. ¶ 62].

In the alternative, if Plaintiff Council is not transferred and remains at Limestone, then it will be necessary to implement all of Plaintiff Council's requested relief because the two principal threats plaintiff faces are widespread at the facility. There is a clear pattern and practice of ADOC abusing the placement of prisoners in solitary confinement at Limestone. As discussed *supra*, ADOC's Admin. Regu. 436 requires that a four person ISRB conduct a weekly review of the status of all prisoners confined to segregation and recommend a timeframe for the prisoner to remain in segregation. Admin. Reg. 436(V).

However, in its segregation cell blocks, B, C, and D dorms, where Limestone currently keeps approximately 152 prisoners in solitary confinement, many of these prisoners have not received an ISRB review in months or years and face indefinite sentences. [FAC Doc no. 2 ¶¶ 140-150]. There is also a clear pattern and practice at Limestone of Limestone officers employing excessive force against prisoners and Limestone supervisors covering up the violations and declining to investigate or discipline the officers. [*Id*. ¶ 67].

1. *Defendant ADOC transfer Plaintiff Council to general population at another ADOC facility*

The remedy is narrowly dawn, as it targets precisely the aspects of ADOC's current policy towards Plaintiff Council that violates his constitutional rights. The ADOC must transfer him away from the facility and officers who pose a current and urgent threat to his safety, in violation of his Eighth Amendment right to be protected; in other words, housing him where he should be placed, away from a risk of serious injury.

    2.     *Defendant ADOC immediately suspend Lt. Pelzer and/or other correctional officers pending an internal investigation and/or referral for criminal prosecution;*

The remedy is narrowly dawn, as it targets the aspect of ADOC's current policy towards Plaintiff Council that violates his Eighth Amendment right to be protected from retaliatory violence by correctional officers. It seeks to require that the follow pursue disciplinary investigations against correctional officers facing serious allegations of committing civil rights violations or engaging in criminal conduct.

    3.     *all defendants are enjoined from the non-spontaneous application of physical force or chemical agents to Plaintiff Council without consulting a panel of three professionals*
    4.     *all defendants are enjoined from placing Plaintiff Council in solitary confinement, or transferring him to another correctional facility without consulting a panel of three professionals*
    5.     *all defendants are enjoined from serving Plaintiff Council with a disciplinary violation or subjecting him to a disciplinary proceeding without consulting a panel of three professionals*

These provisions to ensure that Plaintiff Council can exercise his Eighth Amendment right to be protected from excessive force and indefinite solitary confinement. These remedies are minimally intrusive, as they seek to ensure that ADOC, its agents and employees, actually respect Plaintiff Council's right to be free from excessive force after numerous examples where correctional officers beat or sprayed Plaintiff Council and the ADOC failed to discipline the officers despite being on notice of the incidents and numerous complaints filed by Plaintiff Council.

In addition, the provisions seek to ensure that ADOC actually respects Plaintiff Council's right to be free from indefinite solitary confinement. The remedy is not intrusive as ADOC must follow its own written policy for implementing an Institutional Segregation Review Board ("ISRB") for periodically—weekly—reviewing the placement of a prisoner in solitary confinement. *See Benjamin*, 156 F. Supp. 2d at 344 ("[R]ather than evidencing that a court-

imposed requirement is not compliant with the PLRA, the fact of an applicable Department [of

Corrections] policy attests to narrowness and unobtrusiveness of that requirement.").

6.   *a copy of a Notice will be placed in Plaintiff Council's security, medical and mental health files*
7.   *in the event that the ADOC intends to take specific steps towards Plaintiff Council (employ force, place in solitary, facility transfer, subject to disciplinary charge or proceeding, post Lt. Pelzer or other specific officers at same facility) then a notice of the intent to do so will be emailed to counsel for Plaintiff six hours before the event*
8.   *in the event that the ADOC takes specific steps towards Plaintiff Council (employ force, place in solitary, facility transfer, subject to disciplinary charge or proceeding, post Lt. Pelzer or other specific officers at same facility) then a notice of that event will be filed with the Court within three (3) days of the event, with a copy to counsel for the Plaintiff, containing proof of compliance with the terms of this injunction.*

These measures are necessary in light of the evidence that the ADOC's executive

leadership and Limestone's wardens have routinely ignored their own Administrative

Regulations when subjecting Plaintiff Council to solitary confinement. The provisions are not

intrusive because they are easy to implement and simply seek to clarify the lawful scope of the

Court's injunction.

## CONCLUSION

Plaintiff Robert Earl Council respectfully requests that this Court grant his motion for a

temporary restraining order and preliminary injunction that protects Plaintiff Council's

constitutional rights, and health and safety, as further provided in the Proposed Order, Att. **2,** to

enjoin Defendant Hamm from:

(1) halting the transfer of Plaintiff Council away from Limestone, and

(2) holding Plaintiff Council in solitary confinement.

Respectfully submitted, this 13th day of November 2023.

/s/ *Andrew Menefee*
Andrew Menefee
**MENEFEE LAW**
Alabama Bar No. 1529W23S
1250 Connecticut Ave NW

Ste. 700
Washington D.C., 20036
202-381-0143
amenefee@menefee-law.com

## CERTIFICATE OF NOTICE

Pursuant to Fed. R. Civ. P. 65(b)(1)(B), the attached demand letter, Att. 3, which was sent to Commissioner Hamm and ADOC's General Counsel more than three (3) days before the filing of this lawsuit, and ADOC's response emails, as certified by Plaintiff's attorney, show reasonable "efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B).

*/s/ Andrew Menefee*
Andrew Menefee

**CERTIFICATE OF SERVICE**

I hereby certify that on this 13th day of November, 2023, I filed the foregoing Brief in Support of Plaintiff Robert Earl Council's Motion for a Temporary Restraining Order and Preliminary Injunction with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to all registered CM/ECF users.

I hereby certify that on this 13th day of November, 2023, I emailed copies of the foregoing Brief to General Counsel for Defendant ADOC, Mary Coleman Roberts, marycoleman.roberts@doc.alabama.gov, and Assistant General Counsel, Thomas McCarthy, thomas.mccarthy@doc.alabama.gov.

I hereby certify that on this 13th day of November, 2023, I made arrangements for a process server to complete service on the ADOC at its headquarters building, 301 S Ripley St, Montgomery, AL 36104.

Dated: November 13, 2023

/s/ Andrew Menefee
Andrew Menefee