**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **Robert Earl Council, AKA Kinetik Justice,**<br><br>*Plaintiff*<br>v.<br><br>**Commissioner John Hamm, in his official capacity, for the Alabama Department of Corrections, Warden William Streeter, in his official capacity, Warden Chadwick Crabtree, in his official capacity,**<br><br>*Defendants.* | **Civil Action No. 2:23-cv-00658-ECM** |

## <u>SECOND AMENDED COMPLAINT</u>



*Plaintiff Robert Earl Council, organizer*

**"Even if y'all killed him [Robert Earl Council] I'll make sure nothing happens to y'all."**
- Lt. Jeremy Pelzer speaking to Crips gang members at Limestone prison in June 2023

**"I want Robert Council....I'm tired of this bastard and all his lawsuits."**
- Then Sgt. Pelzer, while threatening physical violence against prisoner Larry Jones, at Limestone prison on October 29, 2019

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................................ i

INTRODUCTION AND BACKGROUND ............................................................................. 1

JURISDICTION AND VENUE ............................................................................................. 4

PARTIES ................................................................................................................................. 4

CONDITIONS PRECEDENT ............................................................................................... 5

STATEMENT OF FACTS ...................................................................................................... 5

    I.    Ongoing Retaliation: Transfer Back to Limestone, Violence, and Solitary Confinement. 5

        A.   October 15, 2023, Limestone officers attack Plaintiff Council and place him in solitary confinement based on fabricated charges. ................................................................. 6

        B.   Recent statements of retaliatory violence by Lt. Pelzer and others. ............................. 10

        C.   Limestone correctional officers' prior assaults on Plaintiff Council. ........................... 11

        D.    Plaintiff Council's recent and ongoing protected activity. ........................................ 12

        E.   Limestone officers use excessive force against prisoners and then fabricate disciplinary charges against the prisoner to cover up their excessive force............................................... 14

        F.   ADOC's own awareness of the need to transfer Plaintiff Council away from Limestone and the threats of retaliatory violence by Lt. Pelzer and others. ........................................... 15

        G.    'Other acts' evidence of prior retaliatory solitary confinement of Plaintiff Council. 16

        H.   'Me too' evidence from other Limestone prisoners. ...................................................... 22

    II.   Retaliatory Refusal to Transfer ................................................................................ 24

CLAIMS FOR INJUNCTIVE RELIEF ................................................................................ 26

    COUNT I (First Amendment Retaliation) ........................................................................ 29

        A.   ADOC's ongoing and retaliatory denial of a transfer. ................................................. 29

        B. Ongoing and retaliatory placement in solitary confinement........................................ 32

    COUNT II (Eighth Amendment Failure to Protect)........................................................ 34

        A.   Ongoing and substantial risk of assault or murder........................................................ 34

        B.   ADOC's ongoing and institutional deliberate indifference to Plaintiff Council's safety. 35

    COUNT III (Eighth Amendment Conditions of Confinement) ............................................. 37

    Count IV (Fourteenth Amendment Procedural Due Process).................................................... 39

PRAYER FOR RELIEF ......................................................................................................... 41

Plaintiff Robert Earl Council AKA Kinetik Justice hereby amends his First Amended Complaint, Doc. 2, by showing as follows:

## INTRODUCTION AND BACKGROUND

1.      Plaintiff Robert Earl Council ("Plaintiff Council"), an incarcerated organizer well-known for advancing prisoners' rights in Alabama through nonviolence, civil disobedience, litigation, and speaking to the press, requires injunctive relief ordering his transfer away from Limestone Correctional Facility (Limestone) and release from solitary confinement.

2.      First, Plaintiff Council seeks an order transferring him away from Limestone because of the threat of violence posed by Lt. Jeremy Pelzer and other Limestone Officers and prisoners acting at their behest. Plaintiff Council seeks this relief against Defendants Commissioner Hamm, Warden Streeter, and Warden Crabtree, who have condoned this retaliatory conduct and failed to protect him from a substantial risk of harm in violation of the First and Eighth Amendments. *See infra* Counts I (A) & II.

3.      Second, Plaintiff Council seeks an order releasing him from solitary confinement. His current placement in solitary confinement violates the First Amendment's prohibition on retaliation, *see infra* Count I (B), as well as the Eighth Amendment's ban on subjecting prisoners to a substantial risk of serious harm (by subjecting them to conditions that exacerbate mental illness) (Count III) and the Fourteenth Amendment's due process requirement of periodic review of release from solitary confinement. (Count IV). Plaintiff Council seeks this relief against Defendants Commissioner Hamm, Warden Streeter, and Warden Crabtree in their official capacities.

4.      Since 1994, when then-20-year-old Plaintiff Council entered the custody of the Alabama Department of Corrections (ADOC), Plaintiff Council has been organizing, advocating,

1

and litigating for the rights of prisoners in Alabama. He is likely the most effective prisoners'

rights organizer in the state, if not the country, and one of the most successful advocates working

to expose ADOC corruption. A co-founder of the Free Alabama Movement ("FAM"), he has

gone on numerous hunger strikes, organized state-wide (and nation-wide) prisoner labor strikes,

a correctional officer strike, filed or helped file hundreds of prisoner rights lawsuits against

ADOC, and garnered national and international press for ADOC's abuse and mistreatment of

prisoners. In the course of doing so, Plaintiff Council has suffered years of solitary confinement

and placed his own life on the line many times over, exposing himself to beatings and chemical

sprays at the hands of correctional officers that have left him with a fractured skull and broken

ribs, and permanently blinded in one eye.

5.      Since 2019, Limestone officials have engaged in tit-for-tat retaliation in response

to Plaintiff Council's sustained efforts to shed light on corruption at the facility. The source of

their animosity is well-documented. Among other actions, in 2019, Plaintiff Council went public

to the Montgomery Advertiser about the dehumanizing "bucket detail" at Limestone, exposed a

corrupt gambling ring run by Lt. Pelzer and other officers, and helped a prisoner sue Lt. Pelzer

after he pepper sprayed him and slammed him to the ground at the prisoner's disciplinary

hearing. *See* Doc. 1-1, First Declaration of Plaintiff Council (Council 1st Decl.)¶¶ 2-5; Doc. 3-5,

Declaration of Travis Griggs.

6.      Lt. Pelzer responded in October of 2019 by fabricating a disciplinary charge

against Plaintiff Council to place him solitary confinement for allegedly possessing contraband

drugs, Council 1st Decl. ¶¶ 6-8; by threatening the life of a friend and supporter of Plaintiff's

outside of prison, Elizabeth Davenport (and her family), *id.* ¶¶ 9-10; Doc. 60-1, Declaration of

Ms. Davenport ¶¶ 5-16, and Lt. Pelzer threatened that Plaintiff Council would "regret" the fact

that he was working on something that would jeopardize Lt. Pelzer's job, Doc. 51-13, Declaration of Darius Mabry at 1, and that "I want Robert Council....I'm tired of this bastard and all his lawsuits." Doc. 3-4, Affidavit of Larry Jones at 3.

7.      Plaintiff Council was transferred away from Limestone in 2020, after which he filed *pro se* lawsuits against Limestone administration and officers for retaliating against him while he was still at Limestone. *See Council v. Pelzer*, No. 220CV01439LSCJHE, 2021 WL 6881484, at *5 (N.D. Ala. Dec. 14, 2021) (finding that Plaintiff Council had engaged in protected speech when speaking to the media and ADOC's Intelligence and Investigations (I&I) Division about officer corruption, and that he had been subjected to an adverse action when "receiving disciplinary action and spending an extended amount of time in segregation;" but that he had failed at that time to establish retaliatory causation), *report and recommendation adopted sub nom.*, 2022 WL 419577 (N.D. Ala. Feb. 10, 2022).

8.      In December 2021, ADOC responded to Plaintiff Council's lawsuit and continued organizing by transferring him back to Limestone in order to chill Plaintiff Council's organizing, advocacy, and litigation efforts. Since then he has been repeatedly assaulted and threatened by correctional officers, *see infra* § SOF (A) – (C), and was held in solitary confinement on pretextual grounds four times, *see infra* §§ SOF (A) & (G) (1) – (3).

9.      Despite the documented threats to Plaintiff Council's safety and ADOC's own recommendations to transfer Plaintiff Council, *see infra* § SOF (F), ADOC is currently denying him a transfer away from Limestone in retaliation for his recent protected activities, including referring other prisoners to civil rights attorneys after Limestone officers assaulted them, passively resisting an unlawful threat of force, and filing this lawsuit.

10.     Defendants have held Plaintiff in solitary confinement on fabricated charges since October 15, 2023, after a Limestone officer assaulted him. Plaintiff Council did not have a meaningful opportunity to present witnesses or otherwise contest the charges against him. Limestone officials have recommended that his custody status be changed to "closed custody," and once ADOC official approves this request, he will be subjected to solitary confinement for up to 18 months, or, as a practical matter, indefinitely.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(3) because this action asserts one or more deprivations of federal constitutional rights by a state officer.

12.     Venue is proper in the Northern Division of the Middle District of Alabama under 28 U.S.C. § 1391(b)(1), because Defendants Commissioner John resides at the state capitol or at ADOC's Montgomery headquarters where they each have an office; and under 28 U.S.C. § 1391(b)(2), because a substantial part of the material events of this case have occurred and are occurring at ADOC headquarters, where Commissioner Hamm, the ADOC General Counsel, and ADOC's classification officers, have failed to transfer Plaintiff Council away from Limestone and release Plaintiff Council from solitary confinement.

## PARTIES

13.     **Plaintiff Robert Earl Council** is a citizen of Alabama, and, despite being held in solitary confinement at Limestone and suffering from anxiety and PTSD, is competent to bring this action for protection of his rights under the Constitution of the United States.

14.     **Defendant John Hamm** is sued in his official capacity as the Commissioner of the Alabama Department of Corrections, for prospective relief under *Ex parte Young* for ongoing

violations of the First, Eighth, and Fourteenth Amendments. At all relevant times Defendant Hamm, and the other Defendants, acted and will act under color of state law.

15.     **Defendant William Streeter** is sued in his official capacity as the Correctional Warden II at Limestone for prospective relief under *Ex parte Young* for ongoing violations of the First, Eighth, and Fourteenth Amendments.

16.     **Defendant Chadwick Crabtree** is sued in his official capacity as the Correctional Warden III at Limestone for prospective relief under *Ex parte Young* for ongoing violations of the First, Eighth, and Fourteenth Amendments.

## CONDITIONS PRECEDENT

17.     Any and all conditions precedent to this lawsuit have been satisfied or exhausted.

## STATEMENT OF FACTS

### I.     Ongoing Retaliation: Transfer Back to Limestone, Violence, and Solitary Confinement.

18.     On December 17, 2021, Captain Caldwell told Plaintiff Council that he had been transferred from Kilby to Limestone because Cheryl Price in the ADOC's central office had issued a directive ordering Plaintiff Council to be transferred to Limestone.

19.     Ms. Price, then the Northern Regional Coordinator, decided to transfer Plaintiff Council to Limestone despite knowing that Plaintiff Council had previously, in 2020, filed lawsuits against many of the officers at Limestone stemming from his 2019 incarceration there, and that Plaintiff Council's attorney had requested a transfer away from Limestone for his protection. For example, on January 9, 2020, Plaintiff Council's attorney David Gespass sent a letter to Ms. Price, informing her that Limestone was uniquely dangerous to Plaintiff Council and asking her to intervene.

20.     Although Lt. Pelzer and other Limestone officers or prisoners working for them currently pose a well-documented and serious threat of assaulting or killing Plaintiff Council, ADOC has apparently failed to discipline Lt. Pelzer or any others, and is currently denying Plaintiff Council a transfer away from Limestone out of retaliation for filing this lawsuit among other protected activities. *See infra* SOF § (A) (October 15, 2023 assault), § (B) (recent threats and attempts at violence), § (F) (ADOC's awareness of the need to transfer Plaintiff for his safety). *See also* Count I (A) (First Amendment, retaliatory denial of transfer exposing Plaintiff Council to violence); Count II (Eighth Amendment deliberate indifference to threat of violence).

21.     Plaintiff Council is currently being detained in solitary confinement to cover up retaliatory animus by Warden Streeter and other ADOC officials, who rubber-stamped fabricated disciplinary charges against Plaintiff Council and are denying him a meaningful process to contest his placement in solitary confinement. *See infra* SOF § (A) (October 15, 2023, retaliatory solitary confinement). *See also infra* Count I (B) (First Amendment, retaliatory solitary confinement), Count IV (Due Process, denial of period review of solitary confinement).

**A.**     **October 15, 2023, Limestone officers attack Plaintiff Council and place him in solitary confinement based on fabricated charges.**

22.     On October 15, 2023, Limestone officers, once again, retaliated against Plaintiff Council by confronting him with a *knowingly* fabricated disciplinary charge based on a years-old video, recently reshared by someone on social media, in which Plaintiff Council was rallying prisoners to get unified to further FAM's non-violent mission of opposing ADOC's unlawful conduct. *See* Doc. 54, 2020 Video from Donaldson Correctional Facility.

23.     Warden Streeter testified that knew from looking at the video that it was not filmed at Limestone but that the video was uploaded recently to a Facebook profile. As a result,

he assumed Plaintiff Council had a contraband cell phone with which he uploaded the video—even absent indication that Plaintiff Council is the one who did so.

24. According to Sgt. Parker, Warden Streeter specifically "instructed [Sgt. Parker] to place Robert Council B/181418 in Restrictive Housing for Rule Violation #529-unauthorized participation in social networking." Doc. 32-3 (Sgt. Parker's narrative in disciplinary report). But Warden Streeter denied doing so, to cover up his retaliatory motive.

25. Executing Warden Streeter's directive, on October 15, 2023, in I dorm at 10:45 a.m. Officer Steven Parker and Officer Brewer entered Plaintiff Council's cell and announced that they were placing him in solitary confinement because he had allegedly violated ADOC's social media policy. Plaintiff Council hesitated and asked, "For what?".

26. Officer Parker immediately raised a canister of SABRE Red cell buster pepper spray and sprayed Plaintiff Council in the face, even though it is a "cell extraction tool" that is supposed to be sprayed into a cell, not directly on a prisoner. Plaintiff Council turned his head, and the chemicals burned his face and went into his left ear. The entire incident, from the initial command to turn around to the use of chemical spray, lasted eight to ten seconds.

27. This assault was excessive because Plaintiff Council remained non-violent and made no threat towards the officers.

28. After he had been taken to the health care unit to be treated for OC spray, Plaintiff Council pointed out to the officers that prisoner Derrol Shaw was visible in the video—Shaw became famous in August 2023 for single-handedly taking over Donaldson Correctional Facility and was not at Limestone, refuting the suggestion that Plaintiff Council had just recently filmed and posted this video. In addition, the light fixtures in the video were different than those installed in the Limestone dormitories. After Plaintiff Council demonstrated factually why the

disciplinary charge against him was false, the correctional officers still charged Plaintiff Council with violating ADOC's social media policy.

29.     But realizing that they needed another basis to justify placing Plaintiff Council in solitary confinement, Sgt. Parker explicitly told Plaintiff Council that he would charge him with assault, even though no such assault occurred. Plaintiff Council told the officers that he had not touched the officers and that the officers did not have body charts, medical records showing that the officers suffered injuries.

30.      On October 15, 2023, Plaintiff Council did not pose a threat to the officers and did not physically touch the correctional officers, except for the officers placing him in handcuffs.

31.     In addition, on October 15, 2023, Plaintiff Council did not disobey an order. Rather, he engaged in protected activity by passively stating his opposition to ongoing unconstitutional retaliation, placement in solitary, and use of force.

32.     Plaintiff Council also did not disobey an order to submit to handcuffs and be escorted to solitary confinement because his PTSD caused him to be unable to comply with the order. Due to the numerous beatings that Plaintiff Council has suffered at the hands of correctional officers, their attempts to kill him, and the years that he has spent in solitary confinement, Plaintiff Council suffers from PTSD. Plaintiff Council's PTSD causes him to hesitate whenever correctional officers approach him in force in a military style phalanx with batons and pepper spray. This is why Plaintiff Council hesitated when Sgt. Parker ordered him to turn around and submit to handcuffs.

33.     On October 30, 2023, the Limestone officers held a purported hearing on the fabricated assault charge and social media policy violations. Plaintiff Council knew from prior

experience that the hearing outcome was predetermined and that the hearing officer would support the charging officers without regard to the underlying facts.

34.     When Plaintiff Council arrived at the hearing, he saw that the disciplinary violation forms on the table in front of the hearing judge were already filled out, finding against him. And neither Sgt. Parker (the "arresting officer") nor any other ADOC witnesses were present.

35.     Plaintiff Council had previously told Warden Streeter not to bring him to the disciplinary hearings if they were conducting them as kangaroo courts with predetermined outcomes. Plaintiff Council stated at the disciplinary hearing that he was only there to request that the toilet in his cell be fixed and then left.

36.     Plaintiff Council was recently notified that he was being reclassified into "closed custody," which will result in him being in solitary confinement for up to eighteen months, if not longer. Plaintiff Council had a reclassification 'hearing,' an informal conversation with no witnesses or evidence, in early December 2023 based on the alleged October 15 assault. The day before the hearing, the officer who served Plaintiff Council the hearing notice told him that he knew Plaintiff Council didn't assault Sgt. Parker, and during the hearing, the classification supervisor said the same thing and explained that he was just doing his job. The classification supervisor recommend that Plaintiff Council's custody status be changed to "close custody."

37.     Plaintiff Council's mental health counsel informed him that he has anxiety and PTSD. These serious mental illnesses were caused by the many years of solitary confinement and numerous beatings at the hands of correctional officers he has suffered while in ADOC's custody.

38.     Being in solitary confinement exacerbates Plaintiff Council's PTSD and anxiety.

**B.    Recent statements of retaliatory violence by Lt. Pelzer and others.**

39.    Recent threats of violence and attempts to kill Plaintiff Council and other retaliation by Lt. Pelzer and other Limestone officers show an urgent and escalating threat to Plaintiff Council so long as he remains at Limestone. Lt. Pelzer and other Limestone officers have made recent comments demonstrating their clear intent and attempts to harm Plaintiff Council:

40.    In late May and early June 2023, several prisoners, including prisoners known by their prison names as Dew Drop and Lil C, told Plaintiff Council that Lt. Pelzer said that if any prisoner killed Plaintiff Council, he would give them a "pass" because he wanted Plaintiff Council dead. These comments placed Plaintiff Council in fear for his life.

41.    Sometime between May 24, 2023 and June 14, 2023, Lt. Pelzer made a statement to other prisoners that "Robert Earl is the reason Lewis (head of the Crips) can't get out," and "[e]ven if y'all killed him I'll make sure nothing happens to y'all."

42.    On June 28, 2023, Lt. Pelzer told other prisoners, that "Robert Council posted a live [referring to live stream] and that's why y'all can't catch store." According to several prisoners, Lt. Pelzer said Plaintiff Council was the reason for the entire building, not just the dormitory, being denied commissary. Lt. Pelzer said this to two different gang members, and several other prisoners reported hearing it to Plaintiff. This was a type of collective punishment that had never been done before and it made Plaintiff Council a potential target for any prisoner aggrieved at being denied access to commissary.

43.    On June 20, 2023, an Officer Charley at Limestone stated to Plaintiff Council, "What you looking at? That's why you lost a [sic] eye at West Jefferson," in reference to a previous assault by correctional officers that left Plaintiff Council blind in one eye.

44.      On June 23, 2023, there was a commotion on Plaintiff Council's housing tier. Plaintiff Council stepped out of his cell and saw an officer beating a prisoner on the ground. Lt. Gilbert and Officer Collins were about three feet away and observed the beating. Plaintiff Council told Lt. Gilbert and Officer Collins that they needed to stop the officer from continuing to use force. Lt. Gilbert and Officer Collins said, "You don't know what's going on."  Plaintiff Council told them that he saw the man was already on the ground and that therefore he had seen enough; the use of force needed to stop.

45.      At that point, rather than stop the violence, Lt. Gilbert stated, "Fuck that shit. I'm gone start sending their ass out the back gate," referring to killing prisoners.

46.      A week later, another prisoner told Plaintiff Council that he had just seen Lt. Gilbert. This prisoner said that Lt. Gilbert referred to Plaintiff Council while gritting his teeth, "I can't wait to catch his ass. Everybody be following him like he somebody."

## C.   Limestone correctional officers' prior assaults on Plaintiff Council.

47.      Plaintiff Council faces a long-standing and ongoing substantial risk of serious injury from assault by correctional officers.

48.      In addition to the October 15, 2023, assault, Plaintiff Council was the victim of several other physical assaults by correctional officers at Limestone in the fall of 2022.

49.      On December 2, 2022, at 3:00 a.m. Officer Brewer came into Plaintiff Council's cell and pepper sprayed Plaintiff Council in the face, after Plaintiff Council asked for the sergeant on duty to come and supervise the situation.

50.      On November 28, 2022, Officer Brewer and Lt. Jones assaulted Plaintiff Council, threw him to the floor, cut his clothes off, and placed him in a suicide cell.

51.      On September 28, 2022, a CERT team targeted Plaintiff Council. One of the officers reached for Plaintiff Council's wrist and twisted his arm behind his back, placing him in

handcuffs. Officers then dragged him by an arm and a leg across the floor of the prison block, twisting both at awkward angles, threw him on top of a trash cart, and wheeled him out of the housing unit. This happened immediately after Plaintiff Council had been peacefully representing prisoners in a meeting with Limestone officials about a nonviolent work stoppage at Limestone, during which the prisoners refused to call off the strike.

52.     Between October and December 2022, Officer Brewer "shook down" Plaintiff Council's cell numerous times, showing that Plaintiff Council could be assaulted at any time that an officer decides to enter his cell. These incidents contributed to Plaintiff Council's PTSD and anxiety, as well as his legitimate fears and hesitation to turn his back on an officer who has entered his cell to harass and intimidate him.

53.     As background for Plaintiff Council's legitimate fears of unprovoked encounters by correctional officers that trigger his PTSD and anxiety, ADOC officers have attempted to kill Plaintiff Council in the past. On January 30, 2021, at Donaldson Correctional Facility, four officers entered Plaintiff Council's cell, beat him until he was unconscious, and initially left him for dead. Plaintiff Council was airlifted to University of Alabama-Birmingham ("UAB") hospital and rendered permanently blind in his left eye. On December 2, 2016, Plaintiff Council was brutally attacked at Limestone by two correctional officers: while escorting him to the shower, Officers Dozier and Shoulders beat and sprayed him with mace.  Officers Dozier and Shoulders beat, choked, and sprayed Plaintiff Council with mace after Plaintiff Council reported Officer Dozier's brother, a member of the CERT team at Holman, to I&I.

**D.     Plaintiff Council's recent and ongoing protected activity.**

54.     As a cofounder of the nonviolent Free Alabama Movement (FAM) and as someone who has, over the years, repeatedly acted to expose corruption by ADOC officers,

Plaintiff Council has a long history of engaging in protected activity. His most recent protected activity includes:

55.     Plaintiff Council filed a damages lawsuit in federal court asserting First Amendment retaliation claims and Eighth Amendment deliberate indifference claims against the current and former Commissioners of ADOC, Limestone Wardens, Lt. Pelzer, and others in their individual capacities. *See Council v. Hamm* et. al., 2:23-cv-00730 (M.D. Al.) Doc. 1 (Complaint filed December 18, 2023).

56.     Plaintiff Council is a named Plaintiff in the class action challenging the parole system, prisoner working conditions, and retaliation by ADOC. *See Council et. al.*, v. *Ivey et. al.,* 2:23-cv-00712-ECM-JTA (M.D. Al.) Doc. 1 (Complaint filed December 12, 2023).

57.     The day before the November 30, 2023 preliminary injunction hearing in this case Plaintiff Council opposed ADOC's attempt to misrepresent a medical form as waiving his right to attend and testify at the hearing.

58.     Plaintiff Council filed the complaint in this case on November 10, 2023.

59.     Plaintiff Council declined to participate in the disciplinary 'hearing' on October 30, 2023, after arriving and realizing it was a sham proceeding.

60.     On October 15, 2023, Plaintiff Council peacefully opposed Sgt. Parker's, Officer Brewer's, and other officers' unjustified threat of force, use of force, and fabrication of disciplinary charges to send Plaintiff Council to solitary confinement.

61.     In September 2023, Plaintiff Council's attorney reported the threats made against Plaintiff Council to ADOC's Law Enforcement Services Division (LESD). As a result of this report, Plaintiff Council spoke with LESD Agent Jesse Pollard and reported Lt. Pelzer's various threats, among other misconduct.

62.     Between July and September 2023, five Limestone prisoners were victims of correctional officers' use of excessive force, and Plaintiff Council referred each of them to civil rights attorneys.

63.

a.      Marquez Vaughn – Mr. Vaughn was beaten by Sgt. Jacobs, Anderson, and Officer Green.

b.      Yinessa Banks- Mr. Banks was beaten by Sgt. Jacobs, Lt. Pelzer, and Officer Clemons. Lt. Pelzer climbed on top of and repeatedly punched Mr. Banks in full view of countless witnesses and other correctional officers, breaking his jaw. *Cf. infra* ¶¶ 110-11 (detailing the subsequent retaliation against Mr. Banks)

c.      Patrick Wooden- Wooden was beaten by Sgt. Jacobs and Officer Waed. After Mr. Wooden attempted to convince other prisoners to sign a petition decrying Lt. Pelzer's assault on Mr. Banks; Sgt. Jacobs and Officer Waed beat Wooden and broke his arm.

d.      Andrew Clark- Clark was beaten by Lt. Chandler, Sgt. Parker, and Officer Collins, while he was handcuffed, until he was unconscious, including striking him on the head with a baton. Mr. Clark began urinating blood. These same officers then charged Clark with fabricated disciplinary violations to create pretext for their use of force.

e.      Anthony Jackson- Mr. Jackson was beaten by Officer Owens and Sgt. Morrison, on August 17, 2023, while Mr. Jackson was handcuffed, giving Mr. Jackson a black eye, and breaking his arm. *Cf. infra* ¶¶ 1034-10910 (detailing the subsequent retaliation against Mr. Jackson).

64.     Warden Streeter, Lt. Pelzer, and other Limestone officers became alarmed by the increasing number of attorney legal visits and legal phone calls being scheduled with those five prisoners, and began to fear that Plaintiff Council was orchestrating a legal campaign to hold them accountable.

**E.      Limestone officers use excessive force against prisoners and then fabricate disciplinary charges against the prisoner to cover up their excessive force.**

65.     According to one or more former Limestone correctional officers, as a matter of routine practice at Limestone, for more than a decade officers and administrators have conducted sham disciplinary hearings in which the hearing officers always support the charging officer.

66.     Correctional officers issue disciplinary charges to cover up their own use of force against the prisoner being charged.

67.     The decisionmaker at the hearings rubber stamps the disciplinary charge and backs up the officer regardless of the prisoner's story or the underlying facts.

68.     The Limestone wardens then sign off on and approve the outcome of the disciplinary hearing. On information and belief, the Limestone warden has never overturned a finding of guilty on a disciplinary charge.

69.     Officers who used force against a prisoner, and then bring fabricated disciplinary charges against the prisoner to cover it up, are never disciplined for this misconduct.

**F.     ADOC's own awareness of the need to transfer Plaintiff Council away from Limestone and the threats of retaliatory violence by Lt. Pelzer and others.**

70.     Since 2019, the ADOC's own internal review boards have recommended that Plaintiff Council be transferred away from Limestone and Lt. Pelzer for Plaintiff Council's own safety: In 2019, the ADOC's segregation board recommended that Mr. Council be transferred for his safety to another institution further south. Despite this, Plaintiff Council was returned to Limestone in December 2021.

71.     Plaintiff Council, through his attorney David Gespass, complained of retaliation and violence by Lt. Pelzer in letters to the Commissioner and other top ADOC officials on April 10, 2023, January 9, 2020, and November 18, 2019. Mr. Gespass raised these same concerns regarding Plaintiff Council's safety and the need to transfer him to ADOC's institutional coordinator Cheryl Price in letters on July 10, 2019, and January 9, 2020.

72.     In September 2023, Plaintiff Council personally reported Lt. Pelzer to LESD Agent Jesse Pollard, after Plaintiff Council's lawyer called LESD. After Agent Pollard

interviewed Plaintiff Council, she told her supervisor about Plaintiff Council's serious concerns but did not open an investigation, even though she has the power to do so.

73. In September 2023, Limestone officials recommended transferring Plaintiff Council and Limestone leadership had plans to do so, swapping Plaintiff Council with his validated 'enemy' Melvin Ray at St. Clair Correctional Facility. The halted this plan after they received the demand letter from Plaintiff Council preceding this lawsuit, as detailed below, *see infra* ¶¶ 117-1212.

74. On many other occasions, after being assaulted or threatened, Plaintiff Council reported the incident to Limestone staff and told them that he feared for his life, including:

> (a) On October 3, 2023, Plaintiff Council spoke with his mental health counselor Mr. Graham and expressed concerns about his life being in danger.
>
> (b) In April 2023, Plaintiff Council informed Classification and Mental health staff at Limestone that he feared for his life.
>
> (c) On September 29, 2022, the day after being assaulted and taken to solitary confinement, Plaintiff Council reported the mistreatment and informed his mental health specialist that his life was in danger.
>
> (d) In December 2021, after being transferred back to Limestone and being placed in solitary confinement without any stated reason, and after two officers came into his cell and shook him down, and after Officer Brewer entered his cell at 3:55 a.m. to serve him with a disciplinary; Plaintiff Council informed his mental health staff that he was not supposed to be in segregation based on his custody level and told them about Officer Brewer coming in his cell. He told them that he feared for his life and that it was causing him to have anxiety and be depressed.

**G.    'Other acts' evidence of prior retaliatory solitary confinement of Plaintiff Council.**

75. As detailed below, Plaintiff Council's current solitary confinement is the fourth iteration of ADOC's pattern and practice of placing Plaintiff Council in solitary confinement on a pretextual and retaliatory basis, since he was transferred back to Limestone in December 2021. The previous incidents include: (I) on December 17, 2021, for no asserted legitimate reason except as a "Christmas present," and because Warden Streeter and others decided that they did

not want Plaintiff Council housed in general population even though his custody level allowed for it; (II) on January 28, 2022, for talking to the media; and (III) on September 28, 2022, when he was assaulted by a CERT team and Lt. Pelzer fabricated disciplinary charges against him, which Warden Streeter upheld.

### 1. December 17, 2021, for no asserted reason but a "Christmas present."

76.      Immediately after Plaintiff Council arrived back at Limestone on December 17, 2021, Lt. Bright and other Limestone officers placed him in "Statewide lock-up" i.e., solitary confinement. Lt. Bright called Plaintiff Council's name, saying "front and center," and told him that, as a "Christmas present," Plaintiff Council was being placed in "Statewide lock-up" in cell D-19. The cell was covered with pepper spray because its previous occupant had been pepper sprayed earlier that same day.

77.      The officers did this even though Plaintiff Council was transferred to Limestone from Kilby as a Medium 9 custody level, meaning that he was eligible to be housed in general population.

78.      On December 17, 2021, Capt. Caldwell told Plaintiff Council that the Limestone administrators and officers had ordered him placed in Statewide lock-up beginning the moment that he returned to Limestone.

79.      Plaintiff Council learned, in a  December 28, 2021 conversation with Limestone classification specialists Ricky Smith and Duffey, that he was being housed in Statewide Lockup because the Limestone administration, including Warden Streeter, the head of mental health, the head of classifications, and the shift supervisors, had met and decided that they did not want Plaintiff Council housed in general population even though his custody level allows for general population.

80.     Plaintiff Council was released from solitary confinement on January 7, 2022.

**2.  January 28, 2022, for talking to the media.**

81.     On January 28, 2022, Officers Whalen and Scott acted on instructions from their supervisors and placed Plaintiff Council back in segregation, though they did not know why. Plaintiff Council was not given a detention notification, as required by ADOC administrative regulations.

82.     On January 31, 2022, Plaintiff Council's mother, Ernestine Council, called Limestone prison and spoke to Defendant Capt. Caldwell. Defendant Capt. Caldwell told Ms. Council that Plaintiff Council had been placed in solitary confinement because ADOC officials in Montgomery had ordered that Plaintiff Council be placed in lock-up for speaking to journalist Keri Blakinger over a phone call.

83.     On February 10, 2022, ADOC's media office clarified to journalist Keri Blakinger that ADOC regulations permitted prisoners to communicate with media over the phone and denied that any prisoner had been disciplined or retaliated against for speaking to a journalist.

84.     In about March or April of 2022, Plaintiff Council was released from solitary confinement.

**3.  September 28, 2022, based on Lt. Pelzer's fabricated disciplinary charges that Warden Streeter upheld.**

85.     On September 28, 2022, in response to Plaintiff Council peacefully representing Limestone prisoners during negotiations with the administration about ending a work stoppage at Limestone, he was assaulted and placed in solitary confinement until April or May of 2023.

86.     On September 26, 2022, Alabama prisoners in at least five facilities went on strike, withholding their labor, and by September 28, 2022, Plaintiff Council and other Limestone prisoners were on strike. At multiple facilities where the strikes were occurring, the wardens retaliated by denying prisoners medical care and limiting their food to only two meals a day.

87.     On September 28, 2022, Limestone officers sent a group of prisoners to negotiate with Plaintiff Council to end the strike and Plaintiff Council explained that the strike was not proceeding for the comfort of the officers or to help the officers run the prison better. That was not the point of what the strikers were doing. Plaintiff Council told everyone in the group that the Alabama prisoners were on strike until they were able to see an opportunity to come home, which included repealing the Habitual Offender Act and making the sentencing guidelines retroactive. That would give many Alabama prisoners serving lengthy sentences an opportunity to be released to their families.

88.     After Plaintiff Council rejected the offer to call off the strike, the prison administrators made a second offer to him that day to end the work strike. They offered to let several of his friends be released from segregation, where they had been detained for years. Plaintiff Council again denied their request. He repeated that the prisoners were solidified in their strike at Limestone, Fountain, Bibb, and other correctional facilities. The point of the strike was not to make it easier for twenty correctional officers to control 2,300 prisoners at Limestone when ADOC supervisory officials were responsible for maintaining sufficient staffing levels, not the prisoners protesting the conditions.

89.     About an hour later (on September 28, 2022), a CERT team and several officers came into B dormitory and counted the prisoners. At the end of the count, instead of exiting the

dormitory, the CERT team and officers went to Plaintiff Council's cell, informing him that they were going to "shake down" his cell. Plaintiff Council informed the officers that he had no contraband and submitted to a strip search. He then stepped aside and allowed his cell to be searched. One of the officers told Plaintiff Council that he was being moved to restrictive housing.

90.     Plaintiff Council objected to being placed in restrictive housing, stated that he had broken no rule or ADOC regulation, and asked to see the officers' supervisors.

91.     One of the officers then reached for Plaintiff Council's wrist and twisted his arm behind his back, placing him in handcuffs. Officers then dragged him by an arm and a leg across the floor of the prison block, twisting both at awkward angles, threw him on top of a trash cart, and wheeled him into the health care unit at the facility before he was taken to solitary confinement.

92.     Defendant Warden Streeter was in B dorm at the time and witnessed this incident.

93.     Lt. Pelzer wrote several false disciplinary charges against Plaintiff Council, alleging that on September 28, 2022, in B dorm, Plaintiff Council physically assaulted Officer Simpson. Lt. Pelzer wrote that Plaintiff Council "incit[ed] other inmates to become aggressive," and that he then "grabbed an officer," Officer Simpson, "causing the officer to fall to the floor." Lt. Pelzer also lied when he wrote in a disciplinary charge dated October 3, 2022, that Plaintiff Council participated in an incident where multiple prisoners gathered around staff to intimidate them.

94.     Lt. Pelzer was not present for any of the incidents described in the disciplinary charges.

95.     During the September 28, 2022 incident in B dorm, Plaintiff Council did not touch an officer or use a weapon. No officers were injured, and he did not demonstrate assaultive behavior towards any officer.

96.     Lt. Jones oversaw a disciplinary 'hearing' on October 17, 2022 for the charges Lt. Pelzer had lodged. Lt. Jones said that no witnesses were present because Plaintiff Council had failed to request witnesses. Plaintiff Council asked Lt. Jones when he had ever known Plaintiff Council not to request witnesses for his disciplinary hearings, explaining that he had not been given the opportunity to do so. Plaintiff Council also explained that he had not served the disciplinaries twenty-four hours in advance, and therefore he did not know the charges against him. Lt. Jones found Plaintiff Council guilty on all of the disciplinaries and walked out.

97.     Plaintiff Council told the hearing officer Bryan McPhail that he would not continue to participate in "kangaroo courts," sham disciplinary proceedings premised on false underlying charges.

98.     On November 2, 2022, Defendant Warden Streeter affirmed the outcome of the disciplinary hearing despite witnessing the underlying incident in B dorm on September 28, 2022, and knowing that the disciplinary charges were false.

99.     On November 8, 2022, Plaintiff Council was served for the first time with several disciplinary charges and informed that he had a reclassification hearing the next day.

100.     Plaintiff Council was not permitted to call witnesses for the November 9, 2022 hearing or to pose questions to any witnesses.

101.     At the reclassification hearing, Ms. Hollingsworth and Mr. Duffey, both classification specialists, expressed to Plaintiff Council that they believed that the disciplinary charges brought against him were a lie.

21

102.     Both Ms. Hollingsworth and Mr. Duffey recommended that Plaintiff Council be transferred to another institution, away from Limestone, for his safety.

**H.     'Me too' evidence from other Limestone prisoners.**

103.     Limestone prisoners Anthony Jackson, Yinessa Banks, A.A., Jamil Salery, and Juan Caples have all experienced acts of retaliation and officer abuse similar to Plaintiff Council.

104.     *Anthony Jackson*. Lt. Pelzer retaliated against Mr. Jackson for Mr. Jackson's protected activity of participating as a witness in this case. On Thursday, November 23, 2023, Mr. Jackson was taken to the shift office because he had been requesting a bed or place to sleep. Lt. Pelzer was in the shift office and addressed Mr. Jackson's request for bedding, saying "why am I going to help you, when I see your name in this lawsuit, pointing to a copy of the complaint on his desk."

105.     Because of Lt. Pelzer's retaliation, Mr. Jackson has been effectively stranded in prison, sleeping on the floor, without any bedding or a designated place to sleep. As of January 4, 2024, Mr. Jackson remains without bedding, a blanket, shoes, or a safe place to sleep, and he recently was hospitalized with pneumonia.

106.     On August 18, 2023, Anthony Jackson was selling food outside of the chow hall, when he was assaulted, while he was handcuffed, by Officer Owens and Sgt. Morrison,  who gave him a black eye and broke his arm during the attack.

107.     Later that day Mr. Jackson recorded a video describing how he was beaten by Limestone officers and showing his injuries, and it went viral on TikTok.

108.     The next day, Lt. Pelzer called Mr. Jackson into his office and asked him if Robert Earl Council was behind the video being posted on TikTok.

109.     Mr. Jackson was placed in solitary confinement based on fabricated charges of threatening or obstructing an officer, in connection with the August 18, 2023, assault on Mr.

Jackson, but the officers had not given any order and Mr. Jackson was complying with their orders and standing while handcuffed when the officers attacked him.

110.   Limestone officers also prevented Mr. Jackson from speaking out about the attack on him, by failing to provide him with a disciplinary hearing on the charges against him, by rejecting his attempts to file a grievance about the assault, telling him there was no grievance procedure, and by blocking him from going to the law library and seeking assistance from the law clerk.

111.   *Yinessa Banks*. On June 20, 2023, Lt. Pelzer, Officer Clemons, and Sgt. Jacobs assaulted Yinessa Banks. Lt. Pelzer climbed on top of and repeatedly punched Yinessa Banks in full view of countless witnesses and other correctional officers. Even though numerous witnesses said that Mr. Banks had not assaulted an officer, he was subjected to false disciplinary charges for assaulting an officer.

112.   At Mr. Banks's disciplinary hearing, the hearing officer stated that, "'I don't think you put your hands on the officer'" but nonetheless imposed a 45-day disciplinary sentence. Later, Officer Clemons apologized to Mr. Banks for what happened and said that he realized that it shouldn't have happened to him.

113.   *A.A.* (a pseudonym, to protect his identity). On September 10, 2023, was robbed by two prisoners who work as Lt. Pelzer's runners, and they stabbed A.A. repeatedly. Instead of locking up and disciplining A.A.'s assailants, Lt. Pelzer put A.A. in solitary confinement because it was "easier." A.A. was also charged with assaulting the prisoners, even though the exact opposite happened.

114.    *Jamil Salery*. Jamil Salery spoke with ADOC investigators about officer corruption at Limestone, and then Lt. Pelzer placed him in solitary confinement, based on a falsified accusation that Mr. Salery had assaulted another prisoner, Winfred Richards.

115.    Lt. Pelzer lied at the disciplinary hearing for Mr. Salery. Mr. Richards tried to correct the record at the disciplinary hearing, but the hearing officer told him that he would rely on the facts presented by the officer. Although Mr. Salery listed witnesses to testify in his defense that he had not assaulted Mr. Richards, none of the witnesses were allowed to testify.

116.    *Juan Caples.* After Juan Caples began associating with Plaintiff Council and FAM, he was held in solitary confinement at Limestone for approximately two and a half years, from January 2021 until his release from solitary on or around October 27, 2023, after his attorney sent a demand letter requesting his return to the general population.

117.    Mr. Caples was never permitted to speak to an ISRB board nor receive any periodic review of his placement in solitary. Indeed, when Mr. Caples asked Limestone classification officer Ms. Overton about removing him from solitary confinement, Officer Overton told him that her hands were "tied" by higher up ADOC officials.

## II.    Retaliatory Refusal to Transfer

118.    In September 2023, Warden Crabtree instructed Classification Supervisor Kristen Obenchain to look into transferring Plaintiff Council away from Limestone in exchange for his validated "enemy," Melvin Ray, at St. Clair Correctional Facility. The Limestone executive team was responsible for this request, and it appears that Warden Crabtree made this request around the same time that Plaintiff Council's attorney contacted LESD and Agent Pollard interviewed Plaintiff Council about threats Lt. Pelzer had made (both in September), suggesting that the transfer was for protection from Lt. Pelzer.

119.     According to Ms. Obenchain, ADOC cannot transfer Plaintiff Council to St. Clair without simultaneously transferring Melvin Ray to Limestone because the two are designated "enemies." ADOC's transfer division asked Ms. Obenchain if LESD had been notified of the transfer request, invoking the "enemy" designation as a barrier to transfer.

120.     But Plaintiff Council and Melvin Ray co-founded FAM together and have always been friendly. Warden Streeter knows that they co-founded FAM yet he relied on the enemy validation and did not question it. ADOC officials have been on notice that Mr. Ray and Plaintiff Council are not enemies, and that any such enemy validation is false, since 2019. *See* Doc. 3-6 at 6–7, Gespass November 8, 2019 Letter.

121.     On October 18, 2023, Cpt. Denise McKenzie discussed a prison transfer with Plaintiff Council, and Cpt. McKenzie "agreed and told [Plaintiff Council] that they had been trying repeatedly to get him transferred and she didn't know what the problem was." She also told Plaintiff Council "she was going up front to see what the holdup was, as they were trying to get [him] transferred."

122.     After Plaintiff Council's attorney sent a demand letter on November 6, 2023, according to Lt. Howell, Limestone stopped the transfer arrangements they had been working on, because Plaintiff Council's "attorneys demanded that [he] be transferred by seven o'clock," and "it would have set bad precedent if [Plaintiff Council] dictated to them that [he] should be transferred." *See* Doc. 3-3 at 5 (demand letter setting 7 PM deadline for transfer on November 8). Lt. Howell also explained that there was a legitimate basis for the transfer, including Plaintiff Council's medical needs. Specifically, because Limestone officials had to regularly transport Plaintiff Council to Birmingham for eye appointments, it made more logistical sense for him to be at a prison facility that is closer to Birmingham, like St. Clair.

## CLAIMS FOR INJUNCTIVE RELIEF

(against Defendants Commissioner Hamm, Warden Streeter, and Warden Crabtree,
in their official capacities)

123.    The following Counts are brought for injunctive relief against Defendant ADOC

Commissioner Hamm, and Limestone Wardens William Streeter and Chadwhick Crabtree, each

in their official capacity, pursuant to *Ex parte Young* and 42 U.S.C. § 1983 because each one he

has 'some connection' with the violations of Plaintiff Robert Earl Council's First, Eighth, and

Fourteenth Amendment rights (Counts I – IV), including the authority and responsibility to stop

the violations, by transferring Plaintiff Council away from Limestone and releasing him from

solitary confinement.

124.    Defendant Commissioner Hamm, in virtue of his position as the Commissioner of

ADOC in his official capacity, has the authority to transfer Plaintiff away from Limestone and to

release him from solitary confinement. The Commissioner of ADOC is responsible for the

independent direction, supervision and control of ADOC.

125.    Defendant Warden Streeter, in virtue of his position as a Warden of Limestone in

his official capacity, has the authority to initiate a prisoner's transfer to another facility and a

prisoner's release from solitary confinement.

126.    Defendant Warden Crabtree, in virtue of his position as a Warden of Limestone in

his official capacity, has the authority to initiate a prisoner's transfer to another facility and a

prisoner's release from solitary confinement.

127.    Although no retrospective causal connection between a state defendant and an

ongoing constitutional violation is required to obtain injunctive relief against that defendant in

his or her official capacity under *Ex parte Young*, the personal involvement of Defendants

Hamm, Streeter, and Crabtree in the violations of Plaintiff Council's constitutional rights further

26

demonstrates ADOC's institutional deliberate indifference and retaliatory animus in their ongoing failure to transfer Plaintiff Council away from the credible threats to his safety at Limestone, and in their ongoing failure to release Plaintiff Council from retaliatory solitary confinement.

128.    Defendant Commissioner Hamm has personally failed and is failing to transfer Plaintiff Council away from Limestone, or take any other corrective action to protect Plaintiff Council from retaliatory violence, such as disciplining Lt. Pelzer or other Limestone officers for their threats and attempts to murder or assault Plaintiff Council.

129.    Defendant Hamm personally received notice of credible threats to Plaintiff Council's life and safety, upon receipt of this lawsuit and while attending the preliminary injunction hearing, but Defendant Hamm persists in displaying deliberate indifference to Plaintiff Council's life and safety, and in condoning the ongoing retaliatory solitary confinement of Plaintiff Council, by failing to transfer Plaintiff Council or discipline Lt. Pelzer or the other officers involved.

130.    Defendant Warden Streeter has denied and is denying a transfer for Plaintiff Council away from Limestone and the threat of violence posed by Lt. Pelzer and others, in retaliation against Plaintiff Council for his ongoing and recent protected activity exposing Warden Streeter and his officers' violations of Plaintiff Council's First and Eighth Amendment rights.

131.    Defendant Warden Streeter received notice of retaliatory violence against Plaintiff Council and unlawful solitary confinement during this litigation but has failed to take any corrective measure, including having Plaintiff Council transferred away from Limestone and released from solitary confinement, and having Lt. Pelzer disciplined.

132.    Defendant Warden Streeter personally initiated the October 15, 2023 incident that culminated in Plaintiff Council's placement in solitary confinement, based on pretextual grounds to cover Warden Streeter's retaliatory motive.

133.    Defendant Warden Streeter personally approved the fabricated disciplinary sentence against Plaintiff Council, and is currently failing to initiate the release of Plaintiff Council from solitary confinement, despite knowing that Plaintiff Council did not assault an officer on October 15, 2023, or willfully disobey an order.

134.    Defendant Warden Streeter has personally failed to discipline Lt. Pelzer or any other of the Limestone officers credibly shown to have attempted to kill Plaintiff Council, or any of the officers who have fabricated disciplinary charges against Plaintiff Council or others. *See supra* SOF § (E) (decade long practice of Limestone Officers using the disciplinary process to cover up their assaults of prisoners).

135.    Defendant Warden Crabtree has personally failed and is failing to transfer Plaintiff Council away from Limestone, or take any other corrective action to protect Plaintiff Council from retaliatory violence, such as disciplining Lt. Pelzer or other Limestone officers for their threats and attempts to murder or assault Plaintiff Council.

136.    Defendant Crabtree personally received notice of credible threats to Plaintiff Council's life and safety, upon receipt of this lawsuit, but Defendant Crabtree persists in displaying deliberate indifference to Plaintiff Council's life and safety, and in condoning the ongoing retaliatory solitary confinement of Plaintiff Council, by failing to transfer Plaintiff Council or discipline Lt. Pelzer or the other officers involved.

## COUNT I (First Amendment Retaliation)

**Ongoing First Amendment Retaliation (A) Denial Of A Transfer Away From Limestone, And (B) Solitary Confinement Based On Fabricated Charges**

137.    In violation of the First Amendment's prohibition on retaliation, Defendants Commissioner Hamm, Warden Streeter, and Warden Crabtree, each in his official capacity, is liable under *Ex parte Young* for injunctive relief requiring the transfer of Plaintiff Council away from Limestone to remedy the retaliatory denial of transfer that Plaintiff Council is being subjected to. *See supra* ¶¶ 123-25 (showing each of these Defendants has the requisite authority under *Ex parte Young* to correct the violation by transferring Plaintiff Council away from Limestone); *see infra* § (A) (ongoing, retaliatory denial of transfer).

138.    In violation of the First Amendment's prohibition on retaliation, , Defendants Commissioner Hamm Warden Streeter, and Warden Crabtree, each in his official capacity, is liable under *Ex parte Young* for injunctive relief requiring Plaintiff Council's release to the general population to remedy Plaintiff Council's ongoing retaliatory placement in solitary confinement. *See supra* ¶¶ 123-125 (showing each of these Defendants has the requisite authority under *Ex parte Young* to correct the violation by releasing Plaintiff Council from solitary confinement); *see infra* § (B) (ongoing, retaliatory solitary confinement).

## A.    ADOC's ongoing and retaliatory denial of a transfer.

139.    Plaintiff re-alleges and incorporates by reference the relevant allegations from the Statement of Facts, specifically: recent and ongoing protected activity, ¶¶ 54-63, SOF § (D); Plaintiff's requests and ADOC's own transfer recommendations, ¶¶ 70-74, SOF § (F); and 'other acts' and circumstantial evidence of retaliation, *see infra* ¶¶ 144-146 (a)-(e), citing ¶¶ 22-24, 75-79, 84-101, 103-04, 132. Regarding the violence that Plaintiff Council is being subjected to by ADOC by the ongoing denial of his transfer away from Limestone, *see* ¶ 26 (October 15, 2023

29

assault); ¶¶ 39-46, SOF § (B) (the recent threats and attempts to kill Plaintiff Council); ¶¶ 69-73, SOF § (F) (Plaintiff's requests for a transfer for his protection and ADOC's own transfer recommendations).

140.    The ongoing denial of a transfer of Plaintiff Council away from Limestone in response to his protected activities, despite the documented threat of violence and attempt to murder or injure Plaintiff Council by Lt. Pelzer and others at Limestone, is retaliation in violation of the First Amendment that would obviously chill a person of ordinary firmness in Plaintiff Council's circumstances.

141.    ADOC's ongoing refusal to transfer Plaintiff Council despite the documented retaliation and violence targeted at Plaintiff Council so long as he has been kept at Limestone, can only be explained by retaliatory animus or ADOC's fear of Plaintiff Council's ability to expose their criminal and unconstitutional treatment of prisoners. ADOC has no legitimate reason to deny Plaintiff's requests and ADOC's own recommendations to transfer him away from Limestone, *see supra,* SOF § (F), establishing pretext for an unlawful, retaliatory motive.

142.    Indeed, Limestone officials initiated a transfer inquiry to have Plaintiff Council transferred to St. Clair after he reported Lt. Pelzer's threat. ADOC officials seemingly blocked the transfer based on a pretextual enemy validation. *See supra* ¶¶ 117-120.

143.    And a lieutenant at Limestone told Plaintiff Council that Limestone officials stopped their transfer arrangements because his attorney sent a demand letter preceding this lawsuit. *See supra* ¶ 121.

144.    'Other acts' showing retaliatory motive behind the ongoing denial of transfer include that, the day before the preliminary injunction hearing, ADOC retaliated against Plaintiff Council by misrepresenting a medical release form as a waiver of Council's attendance at the

hearing. ADOC may well have prevented Plaintiff Council from participating in the hearing the next day, if not for one of Plaintiff's attorneys being on the phone with Mr. Council at the same time that ADOC's attorneys communicated to Plaintiff's attorneys that Mr. Council had waived his participation in the hearing.

145.    As 'other acts' or 'me-too' evidence from after the filing of this lawsuit, Lt. Pelzer retaliated against a named witness in the Complaint in this lawsuit, Anthony Jackson, by denying him needed bedding and a place to sleep, because his name was in the Complaint. *See supra* ¶¶ 103-04.

146.    'Other acts' or circumstantial evidence showing retaliatory motive behind the ongoing denial of transfer includes Warden Streeter's ongoing retaliatory animus against Plaintiff Council and his FAM organizing, as shown by the other times Warden Streeter has retaliated against Plaintiff Council:

> (a) by upholding the fabricated disciplinary charges against Plaintiff Council for assault and disobeying an order on October 15, 2023, despite knowing of their falsity, *see* ¶ 132;
>
> (b) by ordering Plaintiff to be taken to solitary on October 15, 2023, after seeing the video of a FAM message in opposition to ADOC, *see* ¶¶ 22-24;
>
> (c) by personally approving fabricated disciplinary charges against Plaintiff in the fall of 2022, SOF § (G) (III), ¶¶ 84-101;
>
> (d) by holding Plaintiff in solitary confinement in December of 2021 without any justification, SOF § (G) (I), ¶¶ 75-79; and,
>
> (e) by failing to discipline Lt. Pelzer or any other officer involved, showing that Warden Streeter would rather protect his own officers than take any corrective

measures to prevent them from continuing to retaliate and assault Plaintiff Council.

**B. Ongoing and retaliatory placement in solitary confinement.**

147.     Plaintiff re-alleges and incorporates by reference the relevant allegations from the Statement of Facts, specifically: the fabricated, retaliatory grounds for the October 15, 2023 solitary confinement, ¶¶ 22-36, SOF § (A); Plaintiff's recent and ongoing protected activity, ¶¶ 54-63, SOF § (D), a decade long, still ongoing pattern and practice of Limestone officers using fabricated disciplinary charges to cover up their own assaults of prisoners. ¶¶64-68, SOF § (E); 'other acts' evidence of three prior times that ADOC placed Plaintiff Council in solitary confinement as retaliation, *see infra* ¶ 151, citing ¶¶ 75-101, SOF § (G) (1) – (3); and, 'me too' or 'other acts' evidence from six other prisoners who were falsely disciplined or placed in solitary, *see infra* ¶ 152, citing SOF § (H), ¶¶ 108, 110, 112, 113, 115-16.

148.     Plaintiff Council's subjection to solitary confinement from October 15, 2023, through the present, which is likely to continue indefinitely or up to 18 months based on the recent recommendation to reclassify his custody status, is retaliation against Plaintiff Council that would chill a person of ordinary firmness.

149.     On October 15, 2023, Warden Streeter knowingly relied on fabricated, retaliatory grounds, a three-years old video from Donaldson recently reshared on social media of Plaintiff Council's nonviolent advocacy against ADOC, to order Plaintiff taken to solitary. Indeed Warden Streeter did not uphold the disciplinary charges related to the video.

150.     After the assault on and cell extraction of Plaintiff Council on October 15, 2023, when he engaged in First Amendment protected activity by pointing out the age of the video, they immediately switched tracks to find pretext to continue taking Plaintiff Council to solitary confinement: they fabricated charges against Plaintiff Council for assaulting an officer and

disobeying an order during the cell extraction and assault on Plaintiff Council. Indeed, Sgt. Parker transparently told Plaintiff Council he would falsify disciplinary infractions as justification to put Plaintiff Council in solitary confinement.

151.    The disciplinary 'hearing' failed to provide any opportunity for Plaintiff Council to contest the disciplinary charges against him and Defendants have failed to produce a shred of credible evidence to support their charges against Plaintiff Council.

152.    'Other acts' evidence includes the prior three times that ADOC, including Warden Streeter and Lt. Pelzer, threw Plaintiff Council into solitary confinement on a pretextual and retaliatory basis: by holding Plaintiff in solitary confinement in December of 2021 without any justification, SOF § (G) (1), ¶¶ 75-79; by locking Plaintiff up for talking to the media in January 2022, SOF § (G) (2), ¶¶ 80-83; and when Warden Streeter knowingly approved Lt. Pelzer's fabricated disciplinary charges against Plaintiff in the fall of 2022, SOF § (G) (3), ¶¶ 84-101.

153.    'Me too' or 'other acts' evidence of ADOC's retaliatory solitary confinement of Plaintiff Council comes from the following prisoners, who were all subjected to fabricated disciplinary proceedings or solitary confinement in 2023: as detailed in SOF § (H), Anthony Jackson (¶ 108), Yinessa Banks (¶ 110), A.A. (¶ 112), Jamil Salery (¶ 113), and Juan Caples (¶¶ 115-16). Also, Andrew Clark was beaten until he was unconscious and then charges were fabricated against him to cover it up, as noted above in  ¶ 62 (d).

154.    As background context, and 'other acts' evidence of pretext and retaliatory animus, the current fabricated disciplinary sentence against Plaintiff Council is one instance of a decade-long pattern and practice of Limestone officers using fabricated disciplinary charges to cover up their own assaults against prisoners. *See supra,* SOF § (E).

**COUNT II (Eighth Amendment Failure to Protect)**

**Eighth Amendment Failure-to-Protect From Substantial Risk of Assault or Murder by Prison Guards or Prisoners Acting At Their Behest.**

155.     In violation of the Eighth Amendment, Defendants Commissioner Hamm, Warden Streeter, and Warden Crabtree, each in his official capacity are each liable under *Ex parte Young* for injunctive relief to transfer Plaintiff Council away from Limestone; because ADOC as an institution (as well as each of Defendants personally) is currently refusing to transfer Plaintiff Council away from Limestone out of deliberate indifference towards the ongoing and escalating risk of him being assaulted or killed by Lt. Pelzer or other officers or prisoners acting at Lt. Pelzer's behest.

156.     Plaintiff re-alleges and incorporates by reference the relevant allegations from the Statement of Facts, specifically: the October 15, 2023 assault on Plaintiff Council, ¶ 26; the recent threats and attempts to kill Plaintiff Council, ¶¶ 39-46, SOF § (B); Plaintiff's requests for a transfer for his protection and ADOC's own transfer recommendations, ¶¶ 69-73, SOF § (F); and as 'other acts' evidence showing an ongoing pattern of violence and deliberate indifference, the prior assaults on Plaintiff Council, ¶¶ 47-53, SOF § (C); the decade-long practice of Limestone officers covering up their assaults by fabricating disciplinary charges against the victim, ¶¶ 64-68, SOF § (E), and the many other Limestone prisoners in 2023 who have been assaulted by correctional officers or prisoners protected by Lt. Pelzer, *see infra,* ¶¶ 165-66, citing ¶¶ 62 (a)-(e), 105, 110, 112.

**A.      Ongoing and substantial risk of assault or murder.**

157.     Credible threats and attempts to assault or kill Plaintiff Council, by Lt. Pelzer and other Limestone correctional officers, including attempts to incentivize prisoner gang members and runners who work for Lt. Pelzer to assault or kill Plaintiff Council establish an ongoing

substantial risk of serious injury. *See supra,* SOF § (A) (October 15, 2023 assault on Plaintiff Council), (B) (recent threats and attempts to have Plaintiff killed or injured).

158.    Plaintiff Council's current placement in solitary confinement[1] does not insulate him from the risk posed by Lt. Pelzer, who has demonstrated his attempt to use prisoner runners, such as those who have constant access to Plaintiff's cell in solitary confinement, to harm Plaintiff Council. Indeed, the week after Plaintiff Council filed this lawsuit, several officers "warned [him] not to take food from runners and to be careful about what [he] eat[s] because Lt. Pelzer may seek to poison [him]."

159.    As background context and 'other acts' evidence of Limestone officers assaulting Plaintiff Council, Plaintiff Council has been unnecessarily, and severely assaulted by Limestone Correctional officers in the previous years.  *See supra,* SOF § (C).

160.    The failure to discipline Lt. Pelzer or the other officers involved in threatening Plaintiff Council's life, shows that Limestone continues to pose an unnecessarily excessive risk of assault or injury to Plaintiff Council.

161.    As background context and 'other acts' evidence of failing to discipline and enabling Limestone officers who have assaulted prisoners, there is a decade-long pattern and practice of Limestone officers using fabricated disciplinary charges to cover up their own assaults against prisoners. *See supra* SOF § (E).

**B.    ADOC's ongoing and institutional deliberate indifference to Plaintiff Council's safety.**

162.    ADOC's institutional deliberate indifference towards Plaintiff Council's conditions of confinement at Limestone, which fails to provide him reasonable safety from

---

[1]    Moreover, Plaintiff Council, as shown above in Count 1 (B), should be released from solitary confinement back into general population.

assault or murder by Lt. Pelzer or others, shows an ongoing and "obvious" violation of the Eighth Amendment, that "amounts to gratuitous infliction of 'wanton and unnecessary' pain that our precedent clearly prohibits." *Hope v. Pelzer*,[2] 536 U.S. 730, 737-38 (2002).

163.    ADOC's ongoing, institutional deliberate indifference (and the named Defendants' personal deliberate indifference) to Plaintiff Council's safety, by denying him a transfer away from Limestone, is established by ADOC's failure to transfer Plaintiff Council despite the filing of this lawsuit and the preceding demand letter, which provided abundant, well-documented, and quite credible allegations of attempted murder by Lt. Pelzer and other threats of violence targeting Plaintiff Council. It is further bolstered by Plaintiff Council's prior notifications to ADOC officials of the ongoing risk of harm, personally and through counsel.

164.    Limestone officials have recently recommended transferring Plaintiff Council away from Limestone, apparently for his own safety, but those efforts were blocked by higher-level Montgomery ADOC officials, showing pretext for retaliatory motive.

165.    As background and 'other act' evidence showing a pattern and practice of ADOC's deliberate indifference that will likely continue unabated unless and until this Court orders a transfer: Commissioner Hamm, his predecessor Commissioner Dunn, and other high-level ADOC officials have been on notice for years that Limestone poses an unreasonable safety threat to Plaintiff Council, *see supra,* SOF § (F) (Plaintiff's requests, and ADOC's recommendations to transfer him), but have failed and are failing to take any corrective measures, including transferring Plaintiff Council away from Limestone and disciplining Lt. Pelzer and the other officers involved.

---

[2]    The current Lt. Jeremy Pelzer is the son of the named defendant in *Hope v. Pelzer,* Sgt. Mark Pelzer, who also worked at Limestone.

166.     As 'me too' or other acts evidence of the ongoing pattern through 2023 of

Limestone Correctional officers assaulting inmates and covering it up or otherwise escaping any

discipline or corrective measures, including the heavily-witnessed assault on Yinessa Banks by

Lt. Pelzer, ¶ 110, as well as assaults on Anthony Jackson ¶ 105, Marquez Vaughn ¶ 62 (a),

Patrick Wooden ¶62 (c), and Andrew Clark ¶ 62 (d).

167.     As 'me too' or 'other acts' evidence of the ongoing pattern through 2023, of Lt.

Pelzer protecting his prisoner gang members and runners when they assault other prisoners, A.A.

was robbed and stabbed and then thrown in solitary when he complained to Lt. Pelzer about the

assault, ¶¶ 112.

### COUNT III (Eighth Amendment Conditions of Confinement)

### Eighth Amendment Protection From Solitary Confinement's Effect on Plaintiff Council's Anxiety and PTSD.

168.     In violation of the Eighth Amendment, Commissioner Hamm Warden Streeter,

and Warden Crabtree are each liable in their official capacities under *Ex parte Young* for

injunctive relief to release Plaintiff Council from solitary confinement in order to prevent

worsening of his mental illness.

169.     Plaintiff re-alleges and incorporates by reference the relevant allegations from the

Statement of Facts, including his reclassification for indefinite or up to 18 months solitary

confinement, ¶ 36, his reports to Limestone staff of his anxiety and fear for his life, ¶ 73 (a)-(d),

and examples of Plaintiff's Council's anxiety or PTSD being triggered by intimidating cell

entries or assaults. ¶¶ 32, 37-38, 52-53.

170.     Plaintiff Council's subjection to solitary confinement, which is ongoing and likely

to continue indefinitely, or for up to eighteen months, *see supra* ¶ 36, violates the Eighth

Amendment's protection from conditions of confinement that trigger or cause a substantial worsening of Plaintiff Council's anxiety and PTSD.

171.    Plaintiff has been diagnosed with anxiety and PTSD because of the many years of solitary confinement and numerous beatings at the hands of correctional officers he has suffered while in ADOC's custody.

172.    ADOC as an institution (as well as Defendants Hamm, Streeter, and Crabtree personally) received notice from this lawsuit of the threat to Plaintiff Council's mental health posed by his continued placement in solitary confinement.

173.    As this Court has previously found with respect to ADOC's use of solitary confinement, "[t]he combination of the lack of any meaningful activity or social contact and the stressors of living in a dilapidated, filthy, and loud housing unit for almost 24 hours per day results in a heightened risk of decompensation for mentally ill prisoners and a heightened risk of developing serious mental-health needs for those who were initially healthy." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1238 (M.D. Ala. 2017) (Thompson, J.).

174.    The 18-month duration of Plaintiff Council's anticipated solitary confinement further demonstrates the risk of exacerbating his mental illness, because "ADOC lacks a functioning process for screening out prisoners who should not be placed in segregation due to mental illness or ensuring that they are not sent there for dangerously long periods." *Id.* at 1242.

175.    ADOC's institutional and ongoing deliberate indifference to Plaintiff Council's extended placement in solitary confinement and the negative effects on his mental health, will continue indefinitely, or up to 18 months, causing damage to his mental health as he remains confined in solitary.

**Count IV (Fourteenth Amendment Procedural Due Process)**

**Fourteenth Amendment Procedural Due Process for Meaningful Review
of Indefinite Solitary Confinement.**

176.     In violation of the procedural due process component of the Fourteenth

Amendment, and the requirement of periodic review of whether Plaintiff Council should be

released from solitary confinement, Defendants Commissioner Hamm, Warden Streeter, and

Warden Crabtree are each liable in their official capacities under *Ex parte Young* for injunctive

relief to release Plaintiff Council from solitary confinement or to provide an adequate process to

keep him there.

177.     Plaintiff re-alleges and incorporates by reference the statement of facts addressing

the lack of any meaningful process for his disciplinary and reclassification 'hearings,' ¶¶ 33-36;

'other acts' evidence of ADOC's reclassification of Plaintiff Council in November of 2022 in

violation of due process, ¶¶ 98-101; and 'me too' evidence from Juan Caples' over two year

placement in solitary confinement without any periodic review as a pretext to hold him

indefinitely, ¶¶ 115-16.

178.     Plaintiff Council is currently housed in solitary confinement at Limestone, and

has been since October 15, 2023.

179.     Plaintiff Council has been notified that ADOC has recommended to reclassify his

status to "closed custody," up to eighteen months of solitary confinement.

180.     ADOC is likely to keep Plaintiff Council in solitary for an indefinite period of a

year or more, without providing any meaningful periodic review of whether he should be let out

of solitary, in violation of the procedural requirements of the Due Process Clause of the

Fourteenth Amendment.

181.    Plaintiff Council has a protected liberty interest in release from solitary confinement because the duration and conditions of his solitary confinement are atypically severe.

182.    The duration of Plaintiff Council's anticipated 18 months of solitary confinement shows that it is atypical and severe in relation to the conditions of confinement in general population.

183.    The conditions of ADOC's use of solitary confinement and negative impact on Plaintiff Council's mental health, further shows the atypical and severe nature of his solitary confinement, because "[t]he combination of the lack of any meaningful activity or social contact and the stressors of living in a dilapidated, filthy, and loud housing unit for almost 24 hours per day results in a heightened risk of decompensation for mentally ill prisoners and a heightened risk of developing serious mental-health needs for those who were initially healthy." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1238 (M.D. Ala. 2017) (Thompson, J.).

184.    As this Court has previously found, it is "abundantly clear, [that] ADOC lacks a functioning process for screening out prisoners who should not be placed in segregation due to mental illness or ensuring that they are not sent there for dangerously long periods." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1236 (M.D. Ala. 2017) (Thompson, J.).

185.    Moreover, Limestone has a decade-long and ongoing pattern and practice of imposing disciplinary charges without due process, *see supra* SOF§ (E) (anticipated testimony from former Limestone correctional officer(s)).

186.    ADOC's pattern and practice of denying due process, goes back over a decade, and continues today, including roughly 152 prisoners currently placed in solitary

confinement at Limestone an indefinite duration with no process to review their prolonged solitary confinement.

187.    The Limestone segregation unit has three dorms, B, C, and D, currently holding approximately 152 prisoners.

188.    The people currently housed in Dorm B are on average, in solitary for at least six months, and usually indefinitely.

189.    In dorms C and D, the people are housed in solitary for disciplinary charges usually for a couple months, but then fabricated enemy conflicts or other pretextual grounds are used to hold these prisoners indefinitely.

190.    Direct evidence of ADOC's lack of any review of these prolonged periods of solitary confinement comes from a Limestone correctional officer, who indicated in November 2023 that he could not even remember the last time there had been a review of a prisoner's placement in solitary confinement.

191.    ADOC's own regulations, on paper, require that an Institutional Review Board ("ISRB") conduct a weekly review of the basis for a prisoner' placement in segregations, showing ADOC's intentional violation of the due process rights of prisoners in solitary confinement.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Robert Earl Council requests that this Court grant judgment against Defendants Commissioner Hamm, Warden Streeter, and Warden Crabtree, and grant Plaintiff Council injunctive relief to prevent ADOC from depriving Plaintiff Council of his constitutional rights, and health and safety, by

(1) ordering Defendant Hamm, Streeter, and Crabtree in their official capacities to

transfer Plaintiff Council away from Limestone,

(2) ordering Defendant Hamm, Streeter, and Crabtree in their official capacities to

release Plaintiff Council from solitary,

(3) any other and further relief to be requested or ordered, and

(4) reasonable attorney fees, costs and expenses under 42 U.S.C. § 1988.

Respectfully submitted, this 8th day of January, 2024.

/s/ John P. Batson
John P. Batson
Georgia Bar No. 042150
*Pro Hac Vice*
1104 Milledge Road
Augusta, GA 30904
706-737-4040
jpbatson@aol.com

/s/ Andrew Menefee
Andrew Menefee
**MENEFEE LAW**
Alabama Bar No. 1529W23S
1250 Connecticut Ave NW Ste. 700
Washington D.C., 20036
202-381-0143
amenefee@menefee-law.com

/s/ Sumayya Saleh
Sumayya Saleh
Civil Rights Corps
D.C. Bar No. 1743427
*Pro Hac Vice*
1601 Connecticut Avenue, NW
Suite 800
Washington, DC 20009
202-844-4975
sumayya@civilrightscorps.org

*Attorneys for Plaintiff*

## VERIFICATION OF COMPLAINT

I, attorney Andrew Menefee, declare under penalty of perjury pursuant to 28 U.S.C. § 1746, that the factual allegations in the above Second Amended Complaint are true and correct based on a reasonable belief supported by a reasonable investigation into the relevant witnesses and documents.

I am above the age of 18 and of sound mind, competent to make this statement.

Executed on 8th day of January, 2024.


*/s/ Andrew Menefee*
Andrew Menefee