IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ROBERT EARL COUNCIL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 2:23-cv-658-ECM |
| | ) | [WO] |
| COMMISSIONER JOHN HAMM, *et al*., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Plaintiff Robert Earl Council ("Council") filed this lawsuit on November 10, 2023, seeking declaratory and injunctive relief pursuant to 42 U.S.C. § 1983 ("§ 1983") for claims concerning his incarceration at Limestone Correctional Facility ("Limestone"). (Docs. 1 (initial complaint) & 67 (second amended complaint)).  Specifically, Council brings this action against the Commissioner of the Alabama Department of Corrections ("ADOC"), John Hamm ("Commissioner Hamm"); Limestone Warden William Streeter ("Warden Streeter"); and Limestone Warden Chadwick Crabtree ("Warden Crabtree") in their official capacities (collectively, the "Defendants"). (Doc. 67 at 6–7, paras. 14–16).  In so doing, he asserts four claims against the Defendants: (1) retaliation in violation of the First Amendment to the United States Constitution ("Count One"); (2) failure to protect in violation of the Eighth Amendment to the United States Constitution ("Count Two"); (3) unlawful conditions of confinement in violation of the Eighth Amendment to the United States Constitution ("Count Three"); and (4) violation of his right to procedural due process

under the Fourteenth Amendment to the United States Constitution in connection with Council's confinement in restrictive housing[1] ("Count Four"). (*Id.* at 26–40).  To remedy these claims, Council requests: (1) an order instructing the Defendants to transfer him away from Limestone; (2) an order instructing the Defendants to release him from restrictive housing; (3) any other and further relief to be requested or ordered; and (4) reasonable attorney fees, costs, and expenses under 42 U.S.C. § 1988. (Doc. 67 at 43–44).[2]

On June 14, 2024, due to the nature of the requested relief and the passage of time, the Court ordered a joint status report providing Council's custody level and the institution in which he is housed. (Doc. 78).  Accordingly, on June 18, 2024, the parties jointly reported that Council was moved from Limestone to St. Clair Correctional Facility ("St. Clair") on May 30, 2024. (Doc. 79 at 1).  The parties further represented that Council is "housed in general population and classified as medium custody." (*Id.*).  In other words, Council is no longer in a restrictive housing unit.

Thereafter, on July 2, 2024, the Defendants filed a position memorandum wherein the Defendants moved the Court to find that Council's "claims are moot and dismiss this case." (Doc. 81 at 3).  One day later, on July 3, 2024, Council filed his position memorandum which was responsive to the Defendants' memorandum. (Doc. 82 at 2 (citing

---

[1] Council refers to this as "solitary confinement," but the Alabama Department of Corrections officially recognizes these units as "restrictive housing." (*See* doc. 50 at 146).  Therefore, the Court will refer to these units as "restrictive housing."

[2] Council initially requested a litany of other items, including the suspension of Lt. Jeremy Pelzer ("Pelzer") and enjoining the Defendants from serving Council with a disciplinary violation without consulting a panel of three professionals. (Doc. 3 at 18–20).  These requests were subsequently narrowed.

to the Defendants' memorandum)).   As such, the Court construed the Defendants' memorandum (doc. 81) as a motion to dismiss due to mootness, Council's memorandum (doc. 82) as a response to that motion, and ordered a reply from the Defendants to allow for full briefing on the motion. (Doc. 83).   The Defendants filed their reply on July 12, 2024, (doc. 84), and the motion is now ripe for resolution.   For the reasons that follow, the Defendants' motion to dismiss for mootness (doc. 81) is due to be GRANTED.

## II.  BACKGROUND

### A.  Statutory Background

The Prison Litigation Reform Act of 1995 ("PLRA") was enacted to limit the judiciary's reach into the management of prisons and to expedite prison litigation. *See generally* 18 U.S.C. § 3626.  To that end, the PLRA provides strict parameters under which courts can issue prospective relief when civil litigants challenge prison conditions:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

Therefore, any injunctive relief entered in a prison litigation case, such as the present

case, is to be narrowly tailored.[3]   With this statutory background in mind, the Court proceeds to the specifics of Council's case.

### B.  Factual and Procedural Background[4]

### 1.      *General Background and Prior Litigation*

Council is an inmate in Limestone serving a life sentence, which he began serving in 1995.  Also known as "Kinetek Justice," Council is a prison activist who is well-known for leading various labor strikes throughout the ADOC system, speaking to the media regarding prison conditions, and advising other inmates regarding their rights. (Doc. 67 at 3–4).

Limestone is not Council's first stop in ADOC.  Council previously served stints in Holman Correctional Facility ("Holman"), Kilby Correctional Facility ("Kilby"), and William E. Donaldson Correctional Facility ("Donaldson"). (Doc. 82 at 9).  This is also not Council's first lawsuit in connection with his tenure at Limestone.  In a 2020 lawsuit filed in the Northern District of Alabama, Council alleged that after his transfer to Limestone, he contacted media outlets about abuse and a gambling and extortion operation by prison officials. *Council v. Pelzer*, 2021 WL 6881484, at *2 (N.D. Ala. Dec. 14, 2021),

---

[3] The Court harbors serious doubts as to whether Council's requested relief is compliant with Congress' mandate, as enacted by the PLRA, limiting federal courts' reach into the management of prisons. Nonetheless, because this action is moot, the Court declines to conduct this analysis.

[4] The facts recited herein largely stem from Council's operative complaint, though some facts derive from other sources within the record or Council's other cases to which the parties referred the Court.  Such is appropriate because "a district court can consider evidence outside the pleadings to determine whether it has jurisdiction." *Roberts v. Sec'y, Dep't of Corr.*, 2024 WL 1830713, at *3 (11th Cir. Apr. 26, 2024) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

*report and recommendation adopted sub nom.*, 2022 WL 419577 (N.D. Ala. Feb. 10, 2022).  Council alleged that Pelzer, a guard at Limestone, was one of these officials and that Pelzer told another inmate that if Council did not stop trying to get him fired, then Council would regret it. *Id.*  Pelzer then allegedly told inmate Larry Jones ("Jones"), another inmate in the facility, to place Council on his enemy designation list in an effort to get Council transferred to a different facility. *Id.* at *3.  Council further alleged that Pelzer gave Officer Dustin Brewer ("Brewer"), another guard at Limestone, five strips of paper which contained flakka, a synthetic drug, and instructed him to "find" the paper in Council's cell. *Id.*  Brewer did so, and Council was served two disciplinaries for possessing the paper and for distributing drugs for the STF 62 Brim organization,[5] according to a "coerced affidavit" by Jones. *Id.*  As a result, Council was held in segregation for seven months and stripped of phone and visitation privileges for 150 days. *Id.*  Council filed multiple complaints with various ADOC officials regarding these events, but no action was taken. *Id.* at *4.  Ultimately, summary judgment was granted in full for the defendants. *Robert Earl Council v. Pelzer*, 2022 WL 419577, at *1 (N.D. Ala. Feb. 10, 2022).  And in May 2020, ADOC transferred Council out of Limestone. (Doc. 32-1 at 30).

ADOC eventually moved Council to Donaldson.  There, according to Council, on January 30, 2021, four officers entered Council's cell, beat him until he was unconscious, and left him for dead. (Doc. 67 at 14, para. 53).  Council was airlifted to University of

---

[5] STF 62 Brim is recognized as a security threat group (or a "gang") within ADOC.

Alabama at Birmingham ("UAB") hospital and rendered permanently blind in his left eye, for which he continues to receive medical treatment in Birmingham. (*Id.*). This incident is the basis of a civil suit in the Northern District of Alabama in which defendant ADOC officials and employees were dismissed prior to the commencement of discovery.[6] During his recovery from the January 2021 incident, Council was housed in Kilby.

## 2.     *Events Subject to the Present Action*

In December 2021, after Council's recovery in Kilby, ADOC transferred Council to Limestone where he was immediately placed in restrictive housing for disciplinary reasons which Council disputes. (Doc. 67 at 19, paras. 76–77). On January 7, 2022, Limestone staff released Council from restrictive housing, but they placed him back into restrictive housing on January 28, 2022. (*Id.* at 20, paras. 80–81). When asked by Council's mother why Council was in restrictive housing, a Limestone official allegedly told her that ADOC officials in Montgomery ordered that Council be placed there for speaking to a journalist. (*Id.* at 20, para. 82). Several months later, Council was released from restrictive housing. (*Id.* at 20, para. 84).

By spring of 2023, ADOC officials and employees were made aware of Council's fear for his safety in Limestone, including classification and mental health staff at Limestone (doc. 67 at 18), and higher ADOC officials to whom Council's then-attorney wrote a letter, dated April 10, 2023 (doc. 3-6 at 2–3). But as summer began, matters

---

[6] *Robert Earl Council v. Wexford Health Services, Inc.*, 2:22-CV-008, (N.D. Ala. Aug. 5, 2024).

escalated further for Council.  In his operative complaint, Council alleges that "[s]ometime between May 24, 2023 and June 14, 2023, [Pelzer] made a statement to another prisoner that 'Robert Earl is the reason Lewis (head of the Crips [gang]) can't get out,' and '[e]ven if y'all killed him I'll make sure nothing happens to y'all.'" (Doc. 67 at 12, para. 41).  Then, "[o]n June 28, 2023, [Pelzer] told other prisoners, that 'Robert Council posted a live [referring to a live stream] and that's why y'all can't catch store [(purchase items from the commissary)].'" (*Id.*, para. 42).  Council's concern was that "[t]his was a type of collective punishment that had never been done before and it made [him] a potential target for any prisoner aggrieved at being denied access to commissary." (*Id.*).

Council then alleges further incidents, such as, "[o]n June 20, 2023, an Officer Charley at Limestone stated to [Council], 'What you looking at? That's why you lost a [sic] eye at West Jefferson,' in reference to a previous assault by correctional officers that left [Council] blind in one eye." (*Id.*, para. 43).  And, in late June of 2023, "another prisoner told [Council] that he had just seen Lt. Gilbert.  This prisoner said that Lt. Gilbert referred to [Council] while gritting his teeth, 'I can't wait to catch his ass.  Everybody be following him like he somebody.'" (*Id.* at 13, para. 46).

Throughout the fall of 2023, Council alleges that some ADOC staff at Limestone unsuccessfully worked on a potential transfer of Council to St. Clair. (Doc. 67 at 26–27, paras. 118–122).  During this process, an ADOC employee allegedly expressed to Council that because of his medical appointments in Birmingham, "it made more logistical sense for him to be at a prison facility that is closer to Birmingham, like St. Clair." (*Id.* at 27,

para. 122).  At the same time, Council faced a new problem—a TikTok video came to the

attention of Warden Streeter, who believed the video's posting to possibly violate ADOC's

social media policy and ordered a search.  In his operative complaint, Council offers this

narrative of events:

> Executing Warden Streeter's directive, on October 15, 2023, in
> I dorm at 10:45 a.m. Officer Steven Parker and Officer Brewer
> entered Plaintiff Council's cell and announced that they were
> placing him in solitary confinement because he had allegedly
> violated ADOC's social media policy. Plaintiff Council
> hesitated and asked, "For what?".
>
> [] Officer Parker immediately raised a canister of SABRE Red
> cell buster pepper spray and sprayed Plaintiff Council in the
> face, even though it is a "cell extraction tool" that is supposed
> to be sprayed into a cell, not directly on a prisoner. Plaintiff
> Council turned his head, and the chemicals burned his face and
> went into his left ear. The entire incident, from the initial
> command to turn around to the use of chemical spray, lasted
> eight to ten seconds.
>
> [] This assault was excessive because Plaintiff Council
> remained non-violent and made no threat towards the officers.
>
> [] After he had been taken to the health care unit to be treated
> for OC spray, Plaintiff Council pointed out to the officers that
> prisoner Derrol Shaw was visible in the video—Shaw became
> famous in August 2023 for single-handedly taking over
> Donaldson Correctional Facility and was not at Limestone,
> refuting the suggestion that Plaintiff Council had just recently
> filmed and posted this video. In addition, the light fixtures in
> the video were different than those installed in the Limestone
> dormitories. After Plaintiff Council demonstrated factually
> why the disciplinary charge against him was false, the
> correctional officers still charged Plaintiff Council with
> violating ADOC's social media policy [. . .]
>
> Plaintiff Council told the officers that he had not touched the
> officers and that the officers did not have body charts, medical

records showing that the officers suffered injuries.

(*Id.* at 9–10, paras. 25–29).

On October 30, 2023, Council was called to a disciplinary hearing on four charges stemming from the October 15, 2023 incident: (1) assault on an officer; (2) unauthorized participation in social networking; (3) failure to obey a direct order; and (4) violation of state and federal law. (Docs. 32-3–6).   Council declined to participate in the October 30, 2023 disciplinary hearing upon concluding that it was a "sham proceeding." (Doc. 67 at 15, para. 59).   The hearing officer then found Council not guilty of the unauthorized participation in social networking charge (doc. 32-4 at 2) and guilty of the remaining three charges (doc. 32-3 at 2; doc. 32-5 at 2; doc. 32-6 at 2).

Council attended a reclassification hearing in December 2023, which his operative complaint described in the following manner:

> Plaintiff Council had a reclassification 'hearing,' an informal conversation with no witnesses or evidence, in early December 2023 based on the alleged October 15 assault. The day before the hearing, the officer who served Plaintiff Council the hearing notice told him that he knew Plaintiff Council didn't assault Sgt. Parker, and during the hearing, the classification supervisor said the same thing and explained that he was just doing his job. The classification supervisor recommend[ed] that Plaintiff Council's custody status be changed to "close custody."

(Doc. 67 at 11, para. 36).

On November 10, 2023, Council filed the instant lawsuit. (Doc. 1).  Three days later, he amended his complaint. (Doc. 2).  In addition, Council filed motions for a temporary restraining order and for a preliminary injunction (doc. 3)—both of which were denied

(docs. 8 & 74)—and, in December 2023, filed a separate money damages suit pursuant to § 1983 based on the conduct described in this action (doc. 67 at 15, para. 55).  Then, in January 2024, Council filed a second amended complaint in this case (doc. 67), which is the operative complaint.  Several months later, on May 30, 2024, ADOC transferred Council from Limestone to St. Clair, where he is housed in general population. (Doc. 79 at 1).

### III.  LEGAL STANDARDS

Article III, § 2 of the Constitution limits federal court jurisdiction to "Cases" or "Controversies." U.S. CONST. art. III, § 2. "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 37 (1976)). Accordingly, "Article III requires that a plaintiff's claim be live not just when he first brings suit, but throughout the litigation." *Tucker v. Phyfer*, 819 F.2d 1030, 1034 (11th Cir. 1987). Thus, where the only relief requested is declaratory and injunctive, it is possible for events subsequent to filing the complaint to render the matter moot, *Seay Outdoor Advert., Inc. v. City of Mary Esther, Fla.*, 397 F.3d 943, 946 (11th Cir. 2005), by "mak[ing] it impossible for the court to grant any effectual relief whatever to a prevailing party," *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992).  "A moot case is nonjusticiable, and Article III courts lack jurisdiction to entertain it." *Troiano v. Supervisor of Elections in Palm Beach Cnty., Fla.*, 382 F.3d 1276, 1281 (11th Cir. 2004).  Because mootness is

jurisdictional, dismissal is required when an action is moot as a decision in a moot action would be an impermissible advisory opinion. *Al Najjar v. Ashcroft*, 273 F.3d 1330, 1336 (11th Cir. 2001).

"A motion to dismiss based on mootness can challenge jurisdiction in fact, irrespective of the pleadings, and a district court can consider evidence outside the pleadings to determine whether it has jurisdiction." *Roberts*, 2024 WL 1830713, at *3 (citing *Lawrence*, 919 F.2d at 1529). In prison litigation cases, "[t]he general rule [of the Eleventh Circuit] is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief" even when "there is no assurance that he will not be returned to the [complained-of institution]." *Robbins v. Robertson*, 782 F. App'x 794, 799 (11th Cir. 2019) (quoting *McKinnon v. Talladega Cty., Ala.*, 745 F.2d 1360, 1363 (11th Cir. 1984)). However, there are two exceptions to this general rule: (1) voluntary cessation and (2) claims that are "capable of repetition yet evade review." *Id.*; *Roberts*, 2024 WL 18301713, at *3–*4.

## A. Voluntary Cessation

"The basis for the voluntary-cessation exception is the commonsense concern that a defendant might willingly change its behavior in the hope of avoiding a lawsuit but then, having done so, return to its old ways." *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1267 (11th Cir. 2020). "A defendant's voluntary cessation of challenged conduct ordinarily does not render a complaint moot. It does so only if it is 'absolutely clear' that the challenged conduct 'could not reasonably be expected to recur.'" *Purpose Built Fams.*

*Found., Inc. v. United States*, 95 F.4th 1346, 1353 (11th Cir. Mar. 13, 2024) (quoting *West Virginia v. EPA*, 597 U.S. 697, 720 (2022)) (citing *Djadju v. Vega*, 32 F.4th 1102, 1108 (11th Cir. 2022)) (citations omitted).  Though the burden of proving mootness generally falls to the party asserting it, with government actors "there is a presumption that the government will not later resume the action, so the plaintiff bears the burden of showing that there is 'a reasonable expectation' that the government 'will reverse course and reenact the allegedly offensive' policy." *Walker v. City of Calhoun, GA*, 901 F.3d 1245, 1270 (11th Cir. 2018) (citing *Flanigan's Enterprises, Inc. of Georgia v. City of Sandy Springs, Georgia*, 868 F.3d 1248, 1255–56 (11th Cir. 2017), *abrogated on other grounds by Uzuegbunam v. Preczewski*, 592 U.S. 279 (2021)); *Keohane*, 952 F.3d at 1267–68 (collecting cases).  Importantly, such deference is only shown if the challenged government action was "unambiguously terminated." *Doe v. Wooten*, 747 F.3d 1317, 1323 (11th Cir. 2014).

The Eleventh Circuit examines three factors to determine whether there is a reasonable expectation that a defendant will reverse course: (1) whether "the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate jurisdiction"; (2) whether termination of "the challenged conduct was unambiguous, i.e., permanent and complete"; and (3) whether the defendant "has consistently maintained its commitment to the new policy or legislative scheme." *Djadju*, 32 F.4th at 1109 (citing *Walker*, 901 F.3d at 1270).  Such factors are non-exhaustive and non-dispositive and, instead, guide courts in examining whether the doctrine of voluntary cessation applies.

12

*Keohane*, 952 F.3d at 1268.  Ultimately, the question under voluntary cessation is whether a plaintiff has shown a "substantial likelihood" that a "government defendant will reverse course and reenact" the offending conduct. *Keohane*, 952 F.3d at 1258; *Boykins v. Dunn*, 2023 WL 6379601, at *9 (N.D. Ala. Sept. 30, 2023).[7]

## B.   Capable of Repetition, Yet Evading Review

The "capable of repetition, yet evading review" exception only applies "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *United States v. Sanchez-Gomez*, 584 U.S. 381, 391 (2018) (quoting *Turner v. Rogers*, 564 U.S. 431, 439–40 (2011)).  "[A] 'mere physical or theoretical possibility' of repetition is not sufficient; the record must reflect a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *In re Tucker*, 743 F. App'x 964, 966 (11th Cir. 2018) (citation omitted).  "The remote possibility that an event might recur is not enough to overcome mootness, and even a likely recurrence is insufficient if there would be ample opportunity for review at that time." *Mehmood v. U. S. Att'y Gen*., 808 F. App'x 911, 913 (11th Cir. 2020) (quoting *Al Najjar*, 273 F.3d at 1336).  And "speculation" will not suffice. *Owens v. Centurion Med.*, 778 F. App'x 754, 758–59 (11th Cir. 2019) (citing *Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985)).

---

[7] The Court here, and elsewhere in the opinion, cites to non-binding authority.  While the Court recognizes that these cases are not precedential, the Court finds them persuasive.

Regardless of the precise analytical framework utilized, and "[p]robabilities aside, the basic question is whether events have occurred that deprive this [C]ourt of the ability to provide meaningful relief." *Health Freedom Def. Fund v. President of United States*, 71 F.4th 888, 891 (11th Cir. 2023) (citing *Djadju*, 32 F.4th at 1107; *Al Najjar*, 273 F.3d at 1336).

## IV.  DISCUSSION

In their motion to dismiss, the Defendants represent that Council received exactly the relief he requested—that he be transferred away from Limestone and released from restrictive housing. (Doc. 81 at 2–3).   The Defendants further represent that such occurrences were "[d]ue to the normal operations at ADOC." (*Id.* at 3).  In light of these events, the Defendants assert that Council's claims are moot and, as a result, the Court should dismiss this case. (*Id.*).

Council opposes dismissal based on mootness absent a binding commitment that he will not be transferred back to Limestone or put back into restrictive housing. (Doc. 82 at 13–14).  Though he acknowledges that the general rule of the Eleventh Circuit is that "once [a prisoner] is transferred or released from prison, this action will moot [their] claim for injunctive relief," (doc. 82 at 4), he ignores a key phrase: that the rule applies "even when 'there is no assurance that [the prisoner] will not be returned to the [complained-of institution].'" *Robbins*, 782 Fed. App'x at 799 (citing *McKinnon*, 745 F.2d at 1363).

In a similar vein, Council also relies on language from the Eleventh Circuit case of *Lemcool v. Florida Department of Corrections* to state that "because Plaintiff Council is

'subject to return' to Limestone, his 'claims against [Limestone] staff members are not moot.'" (Doc. 82 at 12 (quoting 543 Fed. App'x 909, 913 (11th Cir. 2013)).   But the language which Council omits from his quotation is key to the court's conclusion because it states that the plaintiff in that case was *actually* transferred back to the offending institution. *See Lemcool*, 543 Fed. App'x at 913 ("Because [the plaintiff] was subject to return—and has, in fact, been transferred back to [the complained-of institution]—her claims against [the offending institution's] staff members are not moot.") (citing *Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir. 1975)).   To apply the rule in the manner Council urges would run counter to the Eleventh Circuit's prior cases noting that the possibility of return to the complained-of institution does not defeat mootness. *See, e.g.*, *Robbins*, 782 F. App'x at 799; *Dunn v. Warden Ware State Prison*, 644 F. App'x. 898, 900 n.2 (11th Cir. 2016); *Cotterall*, 755 F.2d at 780*; Owens v. Sec'y, Fla. Dep't of Corr.*, 602 F. App'x 475, 476 (11th Cir. 2015).

Council argues that his case falls into two exceptions: (1) the voluntary cessation doctrine wherein defendants attempt "to evade the jurisdiction of the court" and (2) claims which are "capable of repetition, yet evade review." (Doc. 82 at 4 (citing *Robbins*, 782 Fed. App'x at 799)).   The Eleventh Circuit characterizes the "capable of repetition, yet evad[ing] review" exception as "narrow," *see Owens*, 602 F. App'x at 476, and the Supreme Court has described it as applying "only in exceptional circumstances," *Spencer v. Kemna*, 523 U.S. 1, 17 (1998) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 109 (1983)).   In other words, the exceptions cannot swallow the rule and, here, Council urges this Court to do

just that.[8]

Amidst the parties' contentions, this much is clear: the claims against Wardens Streeter and Crabtree are due to be dismissed as moot since Council is no longer in their custody and, accordingly, they are unable to effectuate any injunctive relief as to Council which this Court may order. *See Chafin v. Chafin*, 568 U.S. 165, 172 (2013) ("a case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'") (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)); *see also Wahl v. McIver*, 773 F.2d 1169, 1173 (11th Cir. 1985) ("Past exposure to illegal conduct does not constitute a present case or controversy involving injunctive relief if unaccompanied by any continuing, present adverse effects.").   Put differently, any order for injunctive relief as to Council directed towards Wardens Streeter and Crabtree would be an "empty order" since they no longer exercise any dominion over him. *See Robbins*, 782 Fed. App'x at 800.  That said, the Court will address each exception in turn as applied to Commissioner Hamm by virtue of his position as Commissioner of ADOC, which generally allows him to effectuate relief as to any prisoner in said system.

## A.    Capable of Repetition, Yet Evading Review

As previously stated, the "capable of repetition yet evading review" exception to mootness is "narrow," *see Owens*, 602 F. App'x at 476, and applicable "only in exceptional

---

[8] Council also discusses seeking attorneys' fees, costs, and expenses under § 1988. (Doc. 82 at 13). However, this cannot support federal jurisdiction alone and therefore plays no role in the determination of mootness. *See Thomas v. Buckner*, 2016 WL 375059, at *8 (M.D. Ala. Jan. 29, 2016) (citing *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 200 (1988)).

circumstances," *Spencer*, 523 U.S. at 17 (quoting *City of Los Angeles*, 461 U.S. at 95). Such exception only applies "if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Sanchez-Gomez*, 584 U.S. at 391 (quoting *Turner*, 564 U.S. at 439–440). "[A] 'mere physical or theoretical possibility' of repetition is not sufficient; the record must reflect a 'demonstrated probability' that the same controversy will recur involving the same complaining party." *In re Tucker*, 743 F. App'x at 966 (citation omitted). Indeed, "speculative" theories will not carry the day, *see Centurion Med.*, 778 F. App'x at 758–59 (citing *Cotterall*, 755 F.2d at 780), and the Court "can consider evidence outside the pleadings to determine whether it has jurisdiction," *Roberts*, 2024 WL 1830713, at *3 (citing *Lawrence*, 919 F.2d at 1529).

Fatal to Council's assertion that the "capable of repetition yet evading review" exception applies to this case is that his instant claims would not evade review since they are the subject of an ongoing money damages suit pursuant to § 1983. *See City of Los Angeles*, 461 U.S. at 109 (holding that a plaintiff's claim would "in no sense" evade review due to it remaining to be litigated in a suit for damages); *Wood v. Raffensperger*, 981 F.3d 1307, 1317 (11th Cir. 2020) (stating that the "capable of repetition yet evading review" exception does not apply "if there is 'some alternative vehicle through which a particular policy may effectively be subject to' complete review.") (quoting *Bourgeois v. Peters*, 387 F.3d 1303, 1308 (11th Cir. 2004)); doc. 67 at 15, para. 55 ("Plaintiff Council filed a

damages lawsuit in federal court asserting First Amendment retaliation claims and Eighth Amendment deliberate indifference claims against the current and former Commissioners of ADOC, Limestone Wardens, Lt. Pelzer, and others in their individual capacities. *See Council v. Hamm et. al.*, 2:23-cv-00730 (M.D. Al[a].) Doc. 1 (Complaint filed December 18, 2023).").  Accordingly, the legality of these exact episodes is subject to review in Council's action for money damages pursuant to § 1983.  Though this could serve as an independent basis for finding that the narrow "capable of repetition yet evading review" exception does not to apply here, the Court will further address some of Council's other arguments below.

Council's opposition to the Defendants' motion heavily relies on the possibility of his transfer back to Limestone.  Yet, it appears just as probable that he could be transferred to Donaldson, Kilby, or Holman, as these are all institutions which previously housed Council. (*See* doc. 82 at 9).  Additionally, there is good reason to believe that Council will remain at St. Clair for the foreseeable future.  "Specifically, because Limestone officials had to regularly transport Plaintiff Council to Birmingham for eye appointments, it ma[kes] more logistical sense for him to be at a prison facility that is closer to Birmingham, like St. Clair."[9] (Doc. 67 at 27, para. 122 (describing an ADOC employee's alleged rationale for a previous transfer attempt)).  It is also possible that Council is eventually transferred to Limestone and the staff members of concern in his complaint are no longer employed there.

---

[9] The eye appointments referenced are for managing the injuries which Council sustained in the January 2021 Donaldson incident.

This is especially true since his term of imprisonment is life without the possibility of parole. (Doc. 84 at 4 n.1).

Council raises past conduct on the part of ADOC to demonstrate that a transfer to Limestone is more probable than other institutions.  Specifically, Council contends that following a magistrate judge's recommendation that the district court grant the defendants' motion for summary judgment in his previous case against a slew of ADOC and Limestone officials in the Northern District of Alabama, ADOC transferred him to Limestone. (Doc. 82 at 6–7 (citing *Council v. Pelzer, et al.*, 2021 WL 6881484, at *8 (N.D. Ala. Dec. 14, 2021)).  Dampening the effectiveness of this argument is that the magistrate judge recommended disposition of the case on the merits in favor of the defendants, a starkly different set of circumstances than the court making a finding of mootness.  In addition, such a recommendation and report is not final until it is adopted by a district judge following a period allowing for objections.  This posture does not lend itself to the Defendants becoming emboldened to the degree which Council paints.  And even so, timing should not be "overemphasized," *Keohane*, 952 F.3d at 1269 (citing *Flanigan*, 868 F.3d at 1259), especially when it is unclear to the Court what the precise circumstances of the transfer were.

To further bolster his arguments, Council points to an allegation in his complaint, which states, "Limestone officials have recently recommended transferring Plaintiff Council away from Limestone, apparently for his own safety, but those efforts were blocked by higher-level Montgomery ADOC officials, showing pretext for retaliatory

motive." (Doc. 82 at 11 (citing doc. 67 at 38, para. 164)).[10]   But this allegation does not give the time, context, or substance of this alleged conduct, nor does it name the individuals involved.   Instead, it insinuates "nothing but the fear that the challenged conduct may recur in some unstated form at an unknown time and place." *See Gagliardi v. TJCV Land Tr.*, 889 F.3d 728, 735 (11th Cir. 2018).   Moreover, this allegation seemingly conflicts with the allegation that it was officials at Limestone, rather than those in the ADOC central office, who cancelled prior plans to transfer Council away from Limestone. (Doc. 67 at 27, para. 122).   Put simply, the odds of ADOC transferring Council to Limestone under the conditions which would repeat the complained-of conduct are speculative, which does not comply with standards for the "capable of repetition yet evading review" exception. *See Centurion Med.*, 778 F. App'x at 758–59 (citing *Cotterall*, 755 F.2d at 780).

As to his claims about restrictive housing, Council argues that these stints in restrictive housing are "far shorter than the life of a civil lawsuit," (doc. 82 at 9), and further argues that ADOC officials in Montgomery ordered that Council be put in restrictive housing as retaliation for his activities protected by the First Amendment (*id.* at 11 (citing doc. 67 at 20, para. 82)).   Liberally construing the allegations and arguments, it might seem facially apparent that this claim would fit the "capable of repetition yet evading review"

---

[10] Presumably, this is related to a disagreement as to whether Melvin Ray ("Ray"), then an inmate at St. Clair, should truly be a designated enemy of Council within ADOC's system—thus preventing the two from being housed in the same institution. (*See* doc. 67 at 26–27, paras. 118–20, at 32, para. 142).   But those allegations lay out why a swap of Ray and Council in lieu of a direct transfer of Council to St. Clair was necessary, rather than showing that ADOC officials fully blocked a transfer.   Further, the surrounding allegations tell a story of bureaucratic delay, rather than a transfer actually stopped by ADOC officials in Montgomery.   And, as Council relays in his response, ADOC indeed swapped Council and Ray between St. Clair and Limestone in May 2024. (Doc. 82 at 8).

exception because ADOC officials, like Commissioner Hamm, could repeat this alleged conduct no matter which ADOC institution Council is housed in, but there are two major problems with this theory.[11]  First, the only conceivable order that the Court could issue to Commissioner Hamm in those theoretical circumstances would be instructing him to ensure that Council's First Amendment rights are not violated.  Such an order would constitute an unlawful follow-the-law injunction "demanding that a party do nothing more than 'obey the law.'" *Elend v. Basham*, 471 F.3d 1199, 1209–10 (11th Cir. 2006) (quoting *Burton v. City of Belle Glade*, 178 F.3d 1175, 1201 (11th Cir. 1999)).  Therefore, there is no effective relief which the Court may give in those circumstance, thus mooting the claim. *See Church of Scientology of Cal.*, 506 U.S. at 12 ("[I]f an event occurs while a case is pending on appeal that makes it impossible for the court to grant 'any effectual relief whatever' to a prevailing party, the appeal must be dismissed." (quoting *Mills v. Green*, 159 U.S. 651, 653 (1895))).  Second, the last alleged instance of any ADOC official in Montgomery playing a direct role in Council's placement into restrictive housing was in 2022, over two years ago. (Doc. 67 at 20, para. 82).  Accordingly, Council has not demonstrated a reasonable expectation that he will be subjected to wrongful placement in restrictive housing outside the context of Limestone, and more specifically, Limestone's complained-of disciplinary process.

---

[11] Of course, it goes without saying that if Council's return to Limestone under these circumstances are speculative, then so too is his return to the restrictive housing units within Limestone.  As a result, the Court focuses this analysis on the theory of these complained-of issues occurring outside the context of Limestone.

Because Council's claims do not evade review, and he has failed to demonstrate more than mere speculation as to the reoccurrence of the complained-of conduct, both in regard to a transfer back to Limestone and placement in restrictive housing, the narrow "capable of repetition yet evading review" exception does not apply to the present case.

## B.   Voluntary Cessation

Once more, "[a] defendant's voluntary cessation of challenged conduct ordinarily does not render a complaint moot. It does so only if it is 'absolutely clear' that the challenged conduct 'could not reasonably be expected to recur.'" *Purpose Built Fams. Found., Inc.*, 95 F.4th at 1353.   To undertake this analysis, the Court will utilize three non-dispositive, non-exhaustive criteria: (1) whether "the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate jurisdiction"; (2) whether termination of "the challenged conduct was unambiguous, i.e., permanent and complete"; and (3) whether the Defendants "ha[ve] consistently maintained [their] commitment to the new policy or legislative scheme." *Djadju*, 32 F.4th at 1109 (citing *Walker*, 901 F.3d at 1270).   And because the Defendants are government officials sued in their official capacities, "there is a presumption that the government will not later resume the [complained-of] action, so [Council] bears the burden of showing that there is 'a reasonable expectation' that the government 'will reverse course and reenact the allegedly offensive' [conduct]." *See Walker*, 901 F.3d at 1270.

For the reasons previously stated in finding that the "capable of repetition yet evading review" exception does not apply to the present case, the Court concludes that the

voluntary cessation exception is similarly inapplicable.  Despite this conclusion, the Court undertakes additional analysis below.

The first factor which the Court assesses is whether "the change in conduct resulted from substantial deliberation or is merely an attempt to manipulate jurisdiction." *Djadju*, 32 F.4th at 1109.  The Defendants represent that Council's removal from restrictive housing and transfer were the products of ADOC's "normal operations." (Doc. 81 at 3). As previously discussed, there are several reasons to find that this is the result of ADOC's normal operations, as the Defendants represent, rather than an attempt to manipulate the jurisdiction of the Court.  First, the claims which Council seeks injunctive relief on are identical to the ones on which he seeks money damages in his separate case.  Such money damages claims are not mooted by a prison transfer, *McKinnon*, 745 F.2d at 1362 (citing *Cruz v. Estelle*, 497 F.2d 496, 499 (5th Cir. 1974)); thus, the Defendants would not evade the Court's jurisdiction to review the complained-of episodes simply by transferring Council to another prison. *See City of Los Angeles*, 461 U.S. at 109.  Second, while describing a previous transfer attempt in his operative complaint, Council alleges that an ADOC employee at Limestone expressed that St. Clair would be more appropriate for him because it is closer to his medical appointments in Birmingham for his eye, which was injured in the January 2021 Donaldson incident. (*See* doc. 67 at 27, para. 122)  Indeed, the topic of transporting Council to his medical appointments runs throughout the course of this litigation, including at one point when Council alleges that the Defendants used it as a basis for keeping him away from the evidentiary hearing on his preliminary injunction

motion. (*See id.* at 32–33, para. 144).   Third, the Defendants had ample opportunity to transfer Council prior to this occasion.   Instead, they litigated the motion for a preliminary injunction with extensive briefing and an all-day evidentiary hearing.   Then, the parties waited a little over two months for a written opinion from the Court, which ultimately denied Council's motion (doc. 74)—a favorable outcome to the Defendants.   In the interim, the Defendants filed a motion to dismiss with extensive briefing. (*See* docs. 69 & 73). These events are indicative of the Defendants willing to fully litigate the case rather than shirking the Court's jurisdiction.

The second factor under the Eleventh Circuit's framework is whether termination of "the challenged conduct was unambiguous, i.e., permanent and complete." *Djadju*, 32 F.4th at 1109.   This factor is easily satisfied as Council is both out of Limestone and out of restrictive housing.   As Council states in his response, "[b]y transferring [Council] to St. Clair and releasing him from solitary confinement, Defendants have, for the present moment, afforded Plaintiff Council the relief he sought in this case." (Doc. 82 at 4).

The third (and final) factor under the Eleventh Circuit's framework is whether the Defendants "ha[ve] consistently maintained [their] commitment to the new policy or legislative scheme." *Djadju*, 32 F.4th at 1109 (citing *Walker*, 901 F.3d at 1270).   Though the Court finds this third factor to be less applicable in the inmate transfer context, *Boykins*, 2023 WL 6379601, at *10, it weighs slightly in the Defendants' favor.   Council remains in St. Clair's general population since his transfer at the end of May 2024, with insufficient evidence of that changing in the near future.

Upon consideration of the three factors enumerated in *Djadju* and the reasons previously stated when finding the "capable of repetition yet evading review" inapplicable to this case, the Court similarly finds that Council fails to demonstrate a "substantial likelihood" that the Defendants will reenact the offending conduct. *See Keohane*, 952 F.3d at 1258. Therefore, the voluntary cessation doctrine does not apply.

In sum, to assess mootness, "the basic question is whether events have occurred that deprive this [C]ourt of the ability to provide meaningful relief." *Health Freedom Def. Fund*, 71 F.4th at 891 (citing *Djadju*, 32 F.4th at 1107; *Al Najjar*, 273 F.3d at 1336). This is the North Star which guides the Court. Here, Council received the exact injunctive relief he requested, which is that he be transferred away from Limestone and released from restrictive housing. Despite this, Council essentially asks for further relief. But, in addition to being impractical and overbroad, such relief would represent an impermissible "follow-the-law" injunction and run afoul of core Congressional pronouncements enacted in the PLRA. As such, Council's transfer to St. Clair and general population deprives the Court of the ability to render any permissible form of meaningful relief in this case. Moreover, Council fails to establish that this case fits any of the exceptions to mootness, especially considering the overlapping facts between this case and his money damages case.

## V. CONCLUSION

Accordingly, for the reasons stated, and for good cause, it is

ORDERED that the Defendants' motion to dismiss (doc. 81) is GRANTED and this case is DISMISSED without prejudice for lack of jurisdiction. It is further

ORDERED that all remaining pending motions are DENIED as moot and all deadlines are TERMINATED.

The Clerk is directed to close this case.

Done this 6th day of August, 2024.

/s/ Emily C. Marks
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE